The STATE COMMITTEE TO STOP
SANGUINE and Charles H.
Stoddard, Plaintiffs,

v.

Melvin R. LAIRD, Secretary of Defense,
and the Radio Corporation of America, Inc., Defendants.

No. 70-C-5.

United States District Court,
W. D. Wisconsin.

Oct. 12, 1970.

Roy G. Tulane, William A. Chatterton, Madison, Wis., for plaintiffs.

John O. Olson, U. S. Atty., Madison, Wis., for Melvin R. Laird.

James O. Huber, Milwaukee, Wis., for Radio Corporation of America.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action in which plaintiffs seek to enjoin defendants from op-erating and maintaining Project Sanguine, a signal system test facility in the vicinity of Clam Lake, Wisconsin.[1] The matter is before the court on a motion to dismiss by The Radio Corporation of America, Inc. (RCA), and on certain affirmative defenses raised by defendant Laird in his answer (the complaint fails to state a claim upon which relief can be granted; the court lacks jurisdiction over the subject matter; and the plaintiffs lack standing to sue). Briefs have been filed by the parties and by *amici curiae*.

■ In their amended complaint, plaintiffs allege that jurisdiction is conferred upon this court by 28 U.S.C. §§ 1651 and 1331. Section 1651 provides that

"(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law."

It is well established that the purpose of § 1651 is to effectuate established jurisdiction, not to enlarge jurisdiction. 6 J.Moore, Federal Practice, Para. 54.10 [2], at 64 (2d Ed.1953). The Seventh Circuit Court of Appeals has held that

"This provision [Section 1651(a)] does not enlarge or expand the jurisdiction of the courts but merely confers ancillary jurisdiction where jurisdiction is otherwise granted and already lodged in the court. Covington and Cincinnati Bridge Co. v. Hager, 1906, 203 U.S. 109, 111, 27 S.Ct. 24, 51 L.Ed. 111, and Knapp v. Lake Shore and Michigan Southern Ry. Co., 1905, 197 U.S. 536, 25 S.Ct. 538, 49 L.Ed. 870. The statute presupposes existing complete jurisdiction and does not contain a new grant of judicial power. In passing upon the meaning

---

1. For purposes of this decision, I assume without deciding that plaintiffs have standing to sue. I also assume without deciding that sovereign immunity does not prevent all actions against federal officers for injunctive relief, even though the effect of the injunction is to thwart or frustrate a policy or program of the federal government.

and purpose of this section this court has said:

'[w]hile the section augments the power of the court in cases of existing jurisdiction, it in no wise expands or extends its territorial jurisdiction.' Edgerly v. Kennelly, 7 Cir., 1954, 215 F.2d 420, 422 [cert. denied, 348 U.S. 938, 75 S.Ct. 359, 99 L.Ed. 735 (1955)]." United States ex rel State of Wisconsin v. First Federal Savings & Loan Assoc., 248 F.2d 804, 808–809 (7th Cir. 1957), cert. denied, 355 U.S. 957, 78 S.Ct. 543, 2 L.Ed.2d 533 (1958).

See also Hyde Construction Co. v. Koehring Co., 348 F.2d 643, 648 (10th Cir. 1965), reversed on other grounds, 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966), cert. denied 385 U.S. 949, 87 S.Ct. 323, 17 L.Ed.2d 227 (1966).

Section 1331 provides:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

Plaintiffs do not contend that this matter arises under either the Constitution or the treaties of the United States. Instead, from the amended complaint, briefs, and oral argument of plaintiffs, it appears that they allege that the case arises under the laws of the United States for the following reasons: (1) RCA has received no authorization from the Federal Communications Commission to construct and operate Project Sanguine; (2) by authorizing the construction of the Project Sanguine Clam Lake facility, Laird has abused his discretionary power to delegate authority; and (3) the defendants have failed to comply with the National Environmental Policy Act of 1969.

■ The provisions of Chapter 5, "Wire or Radio Communication," Title 47, United States Code, apply to

" * * * all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States, and to all persons engaged within the United States in such communication or such transmission of energy by radio, and to the licensing and regulating of all radio stations as hereinafter provided. * * * " 47 U.S.C. § 152(a).

The complaint does not allege interstate and foreign communication by radio or interstate and foreign transmission of energy by radio. Neither do plaintiffs allege interstate and foreign communication by wire which, according to the definition in 47 U.S.C. § 153(a), requires transmission by wire between the points of origin and reception of the transmission. Therefore, since on the face of the complaint the Clam Lake facility is outside the scope of Title 47, Chapter 5, it follows that no statute contained therein requires prior authorization of the Federal Communications Commission.

The Secretary of the Navy "is responsible to the Secretary of Defense for the operation and efficiency of the Department." 10 U.S.C. § 5031(a). Section 7203 of Title 10, United States Code, authorizes the Secretary of the Navy to "make such expenditures as he considers appropriate for scientific investigation and research." There is no allegation in the complaint that Project Sanguine is not considered by the Secretary of the Navy to be an appropriate subject of scientific investigation and research.

■ The National Environmental Policy Act, 42 U.S.C. § 4321 et seq., was enacted January 1, 1970. Section 4332 provides in relevant part:

"§ 4332. Cooperation of agencies; reports; availability of information; recommendations; international and national coordination of efforts

The Congress authorizes and directs that, to the fullest extent possible:

(2) all agencies of the Federal Government shall—

(E) recognize the worldwide and long-range character of environmental problems and, where consistent with the foreign policy of the United States, lend appropriate support to initiatives, resolutions, and programs designed to maximize international cooperation in anticipating and preventing a decline in the quality of mankind's world environment;"

The complaint contains no allegation that "the worldwide and long-range character of environmental problems" was not recognized, nor do plaintiffs allege that appropriate support, consistent with the foreign policy of the United States, was not lent to "initiatives, resolutions, and programs designed to maximize international cooperation in anticipating and preventing a decline in the quality of mankind's world environment." Thus, there is no showing that the requirements of the National Environmental Policy Act of 1969 have not been met. Accordingly, I find that the complaint does not raise a substantial federal question, and that this case does not arise under the laws of the United States.

 The requirements of Section 1331 are not fulfilled for another reason: there is no allegation in the amended complaint that the amount in controversy exceeds $10,000, exclusive of interest and costs. A prerequisite to jurisdiction under 28 U.S.C. § 1331 is that the complaint contain an averment that the matter in controversy exceed $10,000. Bussie v. Long, 383 F.2d 766 (5th Cir. 1967); Giancana v. Hoover, 322 F.2d 789 (7th Cir. 1963); Hornbeak v. Hamm, 283 F.Supp. 549 (M.D.Ala. 1968) (3 judge panel), aff'd 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968); Wahpeton Professional Services, P.C. v. Kniskern, 275 F.Supp. 806 (D.N.D.1967).

However, according to some authorities, including the Seventh Circuit, even without such an averment, I may assert jurisdiction so long as there is something to indicate that the amount in controversy exceeds $10,000. Congress of Racial Equality v. Clemmons, 323 F.2d 54 (5th Cir. 1963); Giancana v. Hoover, *supra*.

Evaluating the amount in controversy in injunction cases often presents difficulties. See 1 W. Barron and A. Holtzoff, Federal Practice and Procedure 104–105 (Rules Ed.1960). The Seventh Circuit has adopted the "plaintiff's viewpoint rule," *i. e.*, the amount in controversy is to be measured by the benefit to the plaintiff: "[T]he existence of such 'value' is to be measured by that which the plaintiffs seek to gain by their action—the pecuniary consequences to them (citations omitted)" Breault v. Feigenholtz, 380 F.2d 90, 92 (7th Cir. 1967), cert. denied 389 U.S. 1014, 88 S. Ct. 591, 19 L.Ed.2d 660 (1967).

When evaluated from the plaintiff's viewpoint, the amount in controversy in this matter does not exceed $10,000. The complaint alleges "[t]hat the operation of [Project Sanguine] has interfered with and will continue to interfere with the telephone service [of] plaintiff, Charles H. Stoddard, at his residence in Minong, Wisconsin." It is clear that some unspecified interference with his residential telephone could not entitle plaintiff Stoddard to recover in excess of $10,000. Under the plaintiff's viewpoint rule, I find it a "legal certainty" that less than $10,000 is at issue in this controversy. City of Boulder v. Snyder, 396 F.2d 853, 856 (10th Cir. 1968), cert. denied, 393 U.S. 1051, 89 S.Ct. 692, 21 L.Ed.2d 693 (1969).

Accordingly, the motion to dismiss is granted as to both defendants, and this case is dismissed for lack of jurisdiction.