**Ray McCARTY and Genevieve McCarty, Plaintiffs-Appellants,**

v.

**AMOCO PIPELINE COMPANY, Defendant-Appellee.**

No. 78–2104.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1979.

Decided April 2, 1979.

Rehearing Denied May 14, 1979.

Patrick L. Duffy, Terre Haute, Ind., for plaintiffs-appellants.

Benjamin G. Cox, Terre Haute, Ind., for defendant-appellee.

Before SWYGERT and BAUER, Circuit Judges, and GRADY, District Judge.[1]

SWYGERT, Circuit Judge.

The principal issue in this diversity case concerns the method of determining, for jurisdictional purposes, the amount in controversy in an action removed from a state court when plaintiff seeks injunctive relief. The district court first sustained its jurisdiction over this case by evaluating the matter in controversy from the defendant's viewpoint. It then ruled that, as to the merits, principles of res judicata barred the plaintiffs' claim. We affirm the district court's judgment.

## I

Because of the questions presented for review, the procedural history of the case is important. On April 22, 1977 Amoco Pipeline Company filed a complaint in the Vigo Superior Court, Vigo County, Indiana, seeking to condemn an easement for a pipeline across real estate owned by Ray and Genevieve McCarty. Condemnation was sought under authority of Indiana Code Section 32–11–3–1, which allows certain corporations empowered by their articles of incorporation to transport petroleum products to the public to exercise the power of eminent domain. The McCartys filed no objections to Amoco's complaint, and on May 26, 1977 the state court entered an order condemning the easement sought by Amoco and appointing three appraisers to assess the property. No interlocutory appeal was taken from this order although such an appeal is authorized. Indiana Code Section 32–11–1–5.

The appraisers awarded compensation of $1,625.00, which sum was deposited with the state court by Amoco on June 23, 1977. The McCartys filed exceptions to this appraisal, which procedure entitled them to a jury trial on the value question under Indiana law. *See Schnull v. Indianapolis RR*, 190 Ind. 572, 131 N.E. 51 (1921). Amoco

1. The Honorable John F. Grady, United States District Judge for the Northern District of Illinois, Eastern Division, sitting by designation.

also, filed a petition to have the condemned easement vested in it, and, with no objections being filed, the state court ordered the easement so vested on July 13, 1977.

On November 21, 1977 the McCartys moved the state court to set aside its May 26 order of condemnation. The court received written arguments from both sides before ruling on the motion. The McCartys stated that the essence of their argument was that Amoco was not in fact using the pipeline for a public use and that the only right Amoco had to appropriate their property was predicated on public use. In support thereof, the McCartys called to the court's attention the facts that the pipeline's termini were at subsidiary plants owned by the same corporate entity which owned Amoco, that no entry or exit pipes existed apart from the termini, and that the pipeline transported a substance known as xylene "which may or may not be petroleum as contemplated by the legislature." After taking the motion under advisement, the state court overruled it on March 9, 1978. No appeal was taken from this March 9 ruling.

On April 7, 1978 the McCartys filed a new suit in Vigo Superior Court which was based on the same theory and facts of allegedly private use as had been presented to the state court in support of the November 21, 1977 motion. The McCartys asked the court to enjoin Amoco from using their land for its pipeline and to order Amoco to remove the pipeline. On April 25, 1978 Amoco removed the action to the United States District Court for the Southern District of Indiana and filed an answer setting up the defense of res judicata. The McCartys filed a motion to remand on May 15, stating that the matter in controversy did not exceed $10,000 as required by 28 U.S.C. § 1332 because they had not asked for any damages. The district court denied the motion on June 8 stating:

> Part of the relief sought by plaintiffs in this action is the removal by defendant of defendant's pipeline from certain real estate allegedly owned by plaintiffs. By its brief and supporting affidavit on the instant motion, defendant has demonstrated that the cost of such removal, as well as the value to defendant of not removing such pipeline, is well in excess of the required jurisdictional amount. Plaintiffs have not contested defendant's assertions by any reply brief.
>
> The principal purpose of the requirement of a minimum jurisdictional amount in controversy is to assure that an action is substantial. The Court is satisfied that the amount in controversy in this action is in excess of Ten Thousand Dollars, exclusive of interest and costs. Plaintiffs' challenge to this Court's jurisdiction over the subject-matter of this action is not well-taken.

The district court subsequently entertained Amoco's motion for summary judgment, and on July 13, 1978 the court granted it, concluding that the McCartys' present action was a collateral attack on the judgment of the Vigo Superior Court and was barred by the doctrine of res judicata.

## II

The first issue on appeal is whether the federal court had jurisdiction to hear the case upon removal. The McCartys contend that because the value to them of the matter in controversy does not exceed $10,000 the jurisdictional minimum amount required by 28 U.S.C. § 1332 is not present. They point to the appraisal award of $1,625.00 as establishing the value of the object in litigation to them,[2] and rely on this court's opinion in *City of Milwaukee v. Saxbe*, 546 F.2d 693 (7th Cir. 1976), for the proposition that the value from the plaintiff's viewpoint is the relevant and controlling one.

Valuation of the matter in controversy in suits for declaratory or injunctive relief is a

---

**2.** We are informed that the amount of this appraisal award is under appeal by the McCartys, which fact calls into question the weight to be afforded the $1,625.00 award for purposes of determining jurisdiction. Because of our disposition of this issue, however, we need do no more than note the fact of the McCartys' appeal at this point.

complex task. The court must not only undertake to evaluate intangible rights as opposed to objects commonly found in the marketplace, but it must decide what rights are involved in the controversy and from whose viewpoint their value is to be measured. A review of the cases and commentary on the subject reveals that there is considerable disagreement as to how a court should accomplish this task.

The seminal case in this area was decided by the Supreme Court in 1862. A steamboat owner sued for abatement of a nuisance, a bridge over the Mississippi River. The Court disposed of the jurisdictional amount question by stating:

> But the want of a sufficient amount of damage having been sustained to give the Federal Courts jurisdiction, will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern.

*Mississippi & Missouri RR v. Ward*, 67 U.S. (2 Black) 485, 492, 17 L.Ed. 311 (1862). The difficulty with this passage lies in the cryptic use of the phrase "value of the object." In the context in which it was used, the term could mean the value of the plaintiff's steamboat business, the cost to the defendant of removing the bridge, the value of the bridge itself, or the value of the plaintiff's right to be free of the obstruction.

Some courts have resolved the difficulty by adopting the rule that only the value to the plaintiff may be used to determine the jurisdictional amount.[3] Support for this interpretation is principally garnered from the Supreme Court's opinion in *Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co.*, 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174 (1915). In that case the plaintiff sought to enjoin the defendant from erecting poles and wires that would interfere with those of the plaintiff. The trial court dismissed the case for lack of the jurisdic-

tional amount in controversy because the cost to the defendant of removing its poles and wires would be less than the required amount. The Supreme Court reversed, saying:

> The district court erred in testing the jurisdiction by the amount that it would cost defendant to remove its poles and wires where they conflict or interfere with those of complainant, and replacing them in such a position as to avoid the interference. Complainant sets up a right to maintain and operate its plant and conduct its business free from wrongful interference by defendant. This right is alleged to be of a value in excess of the jurisdictional amount, and at the hearing no question seems to have been made but that it has such value. The relief sought is the protection of that right, now and in the future, and the value of that protection is determinative of the jurisdiction.

*Id.* at 126, 36 S.Ct. at 32.

Although supportive of the "plaintiff viewpoint" rule, the holding in *Glenwood* is only that jurisdiction is present if the value to the plaintiff exceeds the required amount regardless of the value to the defendant. The *Glenwood* case does not exclude the possibility that jurisdiction would be present in a case where the value required was present from the defendant's viewpoint but not from the plaintiff's. *See* 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3703, pp. 406–07 (1976).

Another approach taken by some courts is to view the amount in controversy from the point of view of the party seeking to invoke federal jurisdiction.[4] Under this rule, the court would look to the plaintiff's viewpoint in a case brought originally in federal court and to the defendant's viewpoint in a case removed to federal court from a state court.

---

**3.** *See, e. g., Kheel v. Port of New York Authority*, 457 F.2d 46 (2d Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972); *Massachusetts State Pharmaceutical Ass'n v. Federal Prescription Service*, 431 F.2d 130 (8th Cir. 1970); *Alfonso v. Hillsborough County Aviation Authority*, 308 F.2d 724 (5th Cir. 1962).

**4.** *See, e. g., Family Motor Inn, Inc. v. L–K Enterprises Div., Consolidated Foods Corp.*, 369 F.Supp. 766 (D.Ky.1973). *See also Hatridge v. Aetna Casualty & Surety Co.*, 415 F.2d 809, 815 (8th Cir. 1969) (dictum) (Blackmun, J.).

■ Although this rule has certain attractive features such as tying the controlling viewpoint to the burden of proof as to jurisdiction, two problems with it arise. The first is the possibility of anomalous results. Under the rule, if a case originally brought in federal court were dismissed for failure to meet the jurisdictional amount from the plaintiff's viewpoint, it could yet end up in federal court if the plaintiff reinstituted the case in state court and the defendant—from whose point of view the required amount was present—then removed it. *See* 14 Wright, Miller & Cooper, *supra* at 410. This possibility introduces the second, more fundamental problem. 28 U.S.C. § 1441 only provides for the removal of actions "of which the district courts of the United States have original jurisdiction . . . ." Thus, it is generally true that if a case could not originally be brought in federal court it may not be removed there. But as outlined above, the "burden of proving jurisdiction viewpoint" rule could lead to a situation where the federal court would assume removal jurisdiction where it could not assert original jurisdiction. Being thus contrary to the statutory directive, the second rule is not a viable interpretation. *See* 1 Moore's Federal Practice, ¶ 0.91[1], pp. 845–46 n. 10 (1978).

There is yet a third rule which a number of courts have adopted [5] and which may be termed the "either viewpoint" rule. Under this rule, as the court stated it in *Ronzio v. Denver & R.G.W.R. Co.*, 116 F.2d 604, 606 (10th Cir. 1940) (footnotes omitted):

> In determining the matter in controversy, we may look to the object sought to be accomplished by the plaintiffs' complaint;

the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.

Although there are no Supreme Court cases directly on point, some support for this third rule can be found in the Court's opinions. In *Smith v. Adams*, 130 U.S. 167, 175, 98 S.Ct. 566, 569, 32 L.Ed. 895 (1889), the Court stated:

> [O]ur appellate jurisdiction in this case depends upon whether the amount in dispute, exclusive of costs, exceeds the sum designated. By matter in dispute is meant the subject of litigation, the matter upon which the action is brought and issue is joined, and in relation to which, if the issue be one of fact, testimony is taken. It is conceded that the pecuniary value of the matter in dispute may be determined, not only by the money judgment prayed, where such is the case, but in some cases by the increased or diminished value of the property directly affected by the relief prayed, or by the pecuniary result to one of the parties immediately from the judgment.[6]

An additional reference to the issue, although admitted cryptic, deserves mentioning. In *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), the Court dismissed the question of jurisdictional amount with this sentence and accompanying citations:

> The considerable interests involved in the purity of interstate waters would seem to put beyond question the jurisdictional amount provided in § 1331(a). See *Glenwood Light & Water Co. v. Mutual*

---

**5.** *See, e. g., Committee for G.I. Rights v. Callaway,* 171 U.S.App.D.C. 73, 518 F.2d 466 (1975); *Government Employees Ins. Co. v. Lally,* 327 F.2d 568 (4th Cir. 1964); *Ronzio v. Denver & R.G.W.R. Co.,* 116 F.2d 604 (10th Cir. 1940). *See also Commonwealth of Massachusetts v. United States Veterans Administration,* 541 F.2d 119, 122 n. 3 (1st Cir. 1976); *Williams v. Kleppe,* 539 F.2d 803, 804–05 n. 1 (1st Cir. 1976).

**6.** The District of Columbia Circuit has noted that the Supreme Court's willingness to entertain the taxpayers' appeal in *Flast v. Cohen,*

392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), also may be indicative of the Court's view that the defendant's viewpoint may be used to establish the jurisdictional amount in certain cases. *Tatum v. Laird,* 144 U.S.App. D.C. 72, 76 n. 6, 444 F.2d 947, 951 n. 6 (1971), *rev'd on other grounds,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). The Court in *Flast,* without mentioning any monetary value of the taxpayer's claim, noted that "the challenged program involves a substantial expenditure of federal tax funds." 392 U.S. at 103, 88 S.Ct. at 1954.

*Light, Heat & Power Co.*, 239 U.S. 121, [36 S.Ct. 30, 60 L.Ed. 174]; *Mississippi & Missouri R. Co. v. Ward*, 2 Black 485, 492, [67 U.S. 485, 17 L.Ed. 311]; *Ronzio v. Denver & R.G.W.R. Co.*, 116 F.2d 604, 606; C. Wright, The Law of Federal Courts 117–119 (2d ed. 1970); Note, 73 Harv.L.Rev. 1369.

*Id.* at 98, 92 S.Ct. at 1390. With considerable qualification, some authorities have read the Court's citations, particularly to the *Ronzio* case and the Wright treatise, as a suggestion that a federal court may view the jurisdictional amount from the perspective of either party. *See* 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3703, pp. 410–11 (1976); C. Wright, Federal Courts 135 n. 12 (3d ed. 1976).

Policy considerations also support the either viewpoint rule. It may be true that the plaintiff viewpoint rule results in some degree of certainty and simplicity of application,

> [b]ut certainty and simplicity, while sometimes important goals should not be allowed to blind federal courts to the realities of the magnitude of the controversy. While the plaintiff viewpoint rule has much to recommend it, it should not be applied if to do so destroys jurisdiction when a substantial claim clearly in excess of $10,000 is involved. Since the jurisdictional amount prerequisite was enacted primarily to measure substantiality of the suit, the question of whether the controversy is substantial should not be answered unqualifiedly by looking only to the value of that which the plaintiff stands to gain or lose. For example, if plaintiff

seeks an injunction to have defendant remove an office building encroaching on one foot of plaintiff's land, the value of the matter in controversy to plaintiff may be trivial while the expense in removal to the defendant if the injunction is granted would be clearly in excess of $10,000. In such a case the courts should recognize that a substantial controversy is involved and look to the effect of the suit on either party to the litigation.

1 Moore's Federal Practice, ¶ 0.91[1], p. 846 (1978).

As for the prior decisions of this court, there is no holding squarely on point.[7] In *Breault v. Feighenholtz*, 380 F.2d 90 (7th Cir.), *cert. denied*, 389 U.S. 1014, 88 S.Ct. 591, 19 L.Ed.2d 660 (1967), a diversity case seeking to set aside a will, defendants challenged the existence of a jurisdictional amount in controversy. Defendants, the executor and trustees of the estate in question, supported their motion to dismiss by an affidavit stating that the estate was in fact insolvent, and that therefore it would be impossible to distribute to plaintiffs amounts meeting the jurisdictional prerequisite. Although plaintiffs attempted to counter this by an amended complaint alleging on information and belief that the estate was sufficiently solvent, this court ruled that bare allegations based merely on information and belief were insufficient proof of the existence of a jurisdictional amount. Thus, the holding of the case was that the plaintiff had failed to show "substantial proof . . . justifying the conclusion that the action involves 'value' in the necessary amount"; the holding was

---

7. A variety of district court cases within this circuit, however, have discussed the issue. Most of these favor the plaintiff viewpoint rule. *See Lakeside Mercy Hospital, Inc. v. Indiana State Bd. of Health*, 421 F.Supp. 193 (N.D.Ind.), *aff'd mem.*, 547 F.2d 1170 (7th Cir. 1976); *Miller-Bradford & Risberg, Inc. v. FMC Corp.*, 414 F.Supp. 1147 (E.D.Wis.1976); *State ex rel. Bruce v. Larkin*, 346 F.Supp. 1065 (E.D.Wis. 1972); *State Committee to Stop Sanguine v. Laird*, 317 F.Supp. 664 (W.D.Wis.1970); *Butterman v. Walston & Co.*, 308 F.Supp. 534 (E.D.Wis.1970). Indeed, one court went so far as to claim that "[a]lthough the value to the defendant of avoiding interference with his ac-

tivities may exceed the jurisdictional amount, the test, at least in the Seventh Circuit, is measured from the plaintiff's viewpoint." *State ex rel. Bruce v. Larkin, supra* at 1067.

Some district court decisions, however, have favored the either viewpoint rule. *See Armstrong v. Townsend*, 8 F.Supp. 953 (S.D.Ind. 1934). *See also National Lock Co. v. Chicago Regional Labor Bd.*, 8 F.Supp. 820 (N.D.Ill. 1934). And there is even some dicta to support the "burden of proving jurisdiction" viewpoint rule. *See Barton Chemical Corp. v. Avis Rent-A-Car System, Inc.*, 402 F.Supp. 1105 (N.D.Ill. 1975) (dictum).

not predicated on the court's statement that the value involved is to be measured by pecuniary consequences to the plaintiffs. *See id.* at 92. The court was not required to decide between viewpoints.

*Motorists Mutual Ins. Co. v. Simpson*, 404 F.2d 511 (7th Cir. 1968), *cert. denied*, 394 U.S. 988, 89 S.Ct. 1470, 22 L.Ed.2d 763 (1969), involved two contentions raised by the plaintiff to prevent a dismissal of its complaint for lack of a jurisdictional amount that are relevant to the question at hand. In neither instance, however, were we confronted with the exact question before us today. *Simpson* involved a declaratory judgment action brought by an insurer. The first relevant theory supporting jurisdiction was that two separate insurance policies contained in the same instrument could be aggregated to obtain the jurisdictional amount. We rejected this theory by holding that where the insurer's liability was several and not joint, the coverage amounts may not be aggregated to reach the jurisdictional amount.

The second theory was that because defendant's compulsory counterclaim involved an amount in excess of the jurisdictional minimum, federal jurisdiction should be sustained. We recognized that some courts had found jurisdiction in such cases, but we ruled that in the case before us, since the defendant had opposed federal jurisdiction from the beginning and had only filed the compulsory counterclaim after the jurisdictional objection had been overruled, "grounds of equity and fairness" dictated that the counterclaimed amount ought not be used. *Id.* at 514–15. Thus, we did not rule that the original "matter in controversy," the insurer's claim, could not be valued from the perspective of the defendant; that question was not before us.

In *City of Milwaukee v. Saxbe*, 546 F.2d 693 (7th Cir. 1976), this court engaged in its only extended discussion of the instant matter. Federal court jurisdiction was asserted on three bases: 28 U.S.C. §§ 1361, 1331, and 1343(4). We first discussed the assertion of section 1361 jurisdiction, finding that since no clear duty was involved, mandamus jur-

isdiction would not lie. We then proceeded to discuss the existence of section 1331 jurisdiction, with particular regard to the presence of the requisite amount in controversy. We noted that the constitutional claim involved—the right to be free from selective and discriminatory prosecution—was "difficult to price for jurisdictional purposes." *Id.* at 701. We then observed that an alternative approach was available, that being the either viewpoint test articulated in *Ronzio, supra*. We stated that "on balance" it was preferable to adhere to the plaintiff viewpoint rule, at least in civil rights suits against federal officers. *Id.* at 702. This comment, however, became dicta when we affirmed the district court's assertion of jurisdiction on the basis of section 1343(4).

■ Whatever the merits may be of following the plaintiff viewpoint rule in civil rights actions against government officials, we decline to follow the *Saxbe* dicta in this removed diversity case. As has already been pointed out "[s]ince the jurisdictional amount prerequisite was enacted primarily to measure substantiality of the suit, the question of whether the controversy is substantial should not be answered unqualifiedly by looking only to the value of that which the plaintiff stands to gain or lose." 1 Moore's Federal Practice ¶ 0.91[1], p. 846 (1978). In the instant case, the defendant Amoco has shown by an unchallenged affidavit that the pecuniary result to it which the judgment prayed for would directly generate would exceed the jurisdictional amount. We believe that the interests of equity and fairness, as well as the purposes behind the removal statute, would here be well served by allowing the plaintiff's claim to be evaluated for jurisdictional purposes by applying the either viewpoint rule. Accordingly, we hold that removal was proper and that the district court had jurisdiction to hear this case.

### III

■ Having disposed of the jurisdictional issue, we reach the merits of the case. In their motion and accompanying briefs urging the Vigo Superior Court to set aside its

May 26 order of condemnation, the McCartys brought before that court the same theory and facts of allegedly private use as they now urge in the instant action. The state court decided the motion against them, and they took no appeal therefrom. Under the doctrine of res judicata, the judgment of the Vigo Superior Court is binding on the parties in this case. *Jordan v. Sisson*, 82 Ind.App. 128, 141 N.E. 881 (1924), *cited with approval in Town of Flora v. Indiana Service Corp.*, 222 Ind. 253, 256–57, 53 N.E.2d 161 (1944). Accordingly, the judgment of the district court granting defendant Amoco's motion for summary judgment is affirmed.