CONSOLIDATED DOORS,
INC., Plaintiff,

v.

MID–AMERICA DOOR
CO., Defendant.

No. 00–C–0170.

United States District Court,
E.D. Wisconsin.

Apr. 3, 2000.

On Reconsideration,
Oct. 13, 2000.

Bert M Eide, Eide Law Offices, Milwaukee, WI, for Consolidated Doors Inc, plaintiff.

Donald H Carlson, Marianne Morris Belke, Crivello Carlson Mentkowski & Steeves, Milwaukee, WI, for Mid–America Door Company, defendant.

## DECISION AND ORDER RE: PLAINTIFF'S MOTION TO REMAND

CALLAHAN, United States Magistrate Judge.

This action was commenced when the plaintiff, Consolidated Doors, Inc. ("Consolidated"), filed a complaint in the Milwaukee County Circuit Court naming Mid–America Door Company ("Mid–America") as a defendant. Consolidated's complaint seeks compensatory damages in the amount of $28,158.91 ($45.000.00 minus $16,841.09) for breach of contract, as well as injunctive relief prohibiting the defendant from terminating an alleged "Authorized Dealer Contract" with the plaintiff, pursuant to, inter alia, Wis.Stat. § 135.04.

Thereafter, Mid–America removed the action to this court pursuant to 28 U.S.C. § 1441 on the grounds that the action is one between citizens of different states and that the amount in controversy exceeds the sum or value of $75,000.00. Now pending before this court is the plaintiff's motion to remand this action to the state court from whence it was removed. Al-

though the plaintiff acknowledges that the parties are citizens of different states and that therefore there is diversity, it argues that the amount in controversy does not exceed $75,000.00. Accordingly, according to the plaintiff, this court does not have subject matter jurisdiction over the dispute. Both parties have consented to magistrate judge jurisdiction, pursuant to 28 U.S.C. § 636(c) and Rule 73(b), Fed. R.Civ.P. For the reasons which follow, the plaintiff's motion to remand is granted.

The plaintiff argues that diversity jurisdiction does not exist in this action because: (1) the plaintiff seeks damages in the amount of $45,000.00 as a result of the defendant's alleged breach of contract; (2) the value of the unsold inventory of defendant's named products which, if the prayed for injunction were entered, the defendant would be required to purchase from Consolidated is less than $20,000.00; and (3) in the event the court were to enter the prayed for injunction, the defendant would not have a loss of earnings in excess of $75,000.00 because, under the terms of the injunction, the plaintiff would be purchasing the defendant's goods at the same price as any other customer or dealer would purchase them.

Not so, says Mid–America. According to the defendant, if this court were to enter the prayed for injunction it would lose in excess of $100,000.00. In support of such assertion it offers the affidavit of John Westfield, who is the Chief Financial Officer of Mid–America. Mr. Westfield's affidavit reads as follows:

1. He is the Chief Financial Officer of Mid–America Door Company.

2. As part of his duties, he is familiar with the financial books, records and accounts of Mid–America Door Company.

3. As part of his duties, he is familiar with the customer service accounts of Consolidated Door, Inc., and other accounts, particularly in Wisconsin.

4. In Wisconsin, Mid–America Door Company has one other customer who orders and purchases parts, door sections or complete doors from Mid–America Door Company, namely: Baywood Manufacturing Company.

5. Baywood Manufacturing Company, in the fiscal year 1998–1999, purchased in excess of $500,000.00 of door sections and some parts from Mid–America Door Company and will purchase approximately $600,000.00 in door sections and doors in the fiscal year 1999–2000, both representing approximately 3% of sales of Mid–America Door Company.

6. In addition, it is anticipated that Baywood Manufacturing Company may increase the scope of its orders to include certain parts for the assembly of doors with anticipated sales for the next fiscal year in the area of $1 million.

7. Baywood Manufacturing Company as a customer has required an arrangement to be an exclusive purchaser of parts and door sections in Wisconsin.

8. Consequently, a forced sale to other customers in Wisconsin would result on substantial business losses to Mid–America Door Company which, in the aggregate, are substantially in excess of $100,000.00 as represented by the annual sales.

Citing *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389 (7th Cir.1979), Mid–America argues that in cases involving declaratory or injunctive relief, such as this, the amount in controversy requisite to support federal jurisdiction under 28 U.S.C. § 1332(a) should be evaluated from "either viewpoint"; that is to say, the amount in controversy can be measured by the cost to the defendant of enforcing the right sought by the plaintiff. And because Mr. Westfield's affidavit avers that a forced sale to customers in Wisconsin other than Baywood Manufacturing Company would result in business losses to Mid–America "substantially in excess of $100,000.00", this court has diversity jurisdiction over

this action and therefore the motion to remand should be denied.

Consolidated does not argue that Mid–America is wrong in relying on *McCarty* for the proposition that the amount in controversy in a case in which declaratory or injunctive relief is being sought can be measured by the cost to the defendant of enforcing the right sought by the plaintiff. Indeed, the court in *McCarty* did adopt the "either viewpoint" rule in determining whether there was federal diversity jurisdiction in a case in which declaratory or injunctive relief is being sought. Under that rule, " '[i]n determining the matter in controversy, [a court] may look to the object sought to be accomplished by the plaintiff's complaint; the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.' " *McCarty*, 595 F.2d at 393 (citing *Ronzio v. Denver & R.G.W.R. Co.*, 116 F.2d 604, 606 (10th Cir. 1940)).

Instead, Consolidated argues that Mid–America's presentment, i.e., Mr. Westfield's affidavit, does not constitute "competent evidence" sufficient to meet its burden of demonstrating that the amount in controversy, even applying the "either viewpoint" test, exceeds $75,-000.00. Specifically, Consolidated argues that the affidavit "does not establish the lost earnings". Even more specifically, Consolidated argues that the affidavit does not show:

(1) That defendant has any legally enforceable contract to sell products which will be interfered with if an injunction is granted.

(2) The amount of lost earnings is not indicated. No method for determining the amount of lost earnings is given; such as, historical data of earnings as a percentage of sales; nor has defendant produced income statements to aid the court determine the amount of lost earnings or a method of determining the alleged lost earnings.

(3) No indication of the time period for the lost earnings is provided by the affidavit.

(4) No contract or affidavit from defendant's customer, Baywood Manufacturing Company (Baywood), is provided to show that Baywood will actually refuse to make purchases if the defendant is required to sell its products to plaintiff pursuant to an injunction.

(5) Why defendant cannot mitigate its lost sales to Baywood by sales of its product to other people and companies in Wisconsin that sell garage doors, sections and parts.

(Pl.'s, Reply Br., p. 3)

■ It is well settled that the burden rests on the defendant in a removal action to prove that the amount in controversy is sufficient to support federal diversity jurisdiction. A defendant seeking removal may meet that burden by a preponderance of the evidence. *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir.1993). "If [a defendant's] allegations of jurisdictional facts are challenged by [its] adversary in any appropriate manner, [the defendant] must support them by competent proof. And where they are not so challenged, the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify [its] allegations by a preponderance of evidence." *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

■ Given all of the foregoing, the question that must be answered here is whether the defendant has met its burden in proving, based on competent proof and by a preponderance of the evidence, that the pecuniary result to it which a judgment in favor of the plaintiff would directly produce exceeds $75,000.00. In my opinion, the answer to that question is "no".

Mr. Westfield's affidavit, in fundamental respects, is most conclusory. To be sure, he sets forth the gross amount of sales

that Mid–America made to Baywood Manufacturing Company in fiscal year 1998–1999. He also sets forth the volume of gross sales that Mid–America will be making to Baywood Manufacturing Company in fiscal year 1999–2000. The heart of Mid–America's assertion that the amount in controversy in this action exceeds $75,000.00, however, is found in Mr. Westfield's averment that Baywood Manufacturing Company "*may* increase the scope of its orders to include certain parts for the assembly of doors with anticipated sales for the next fiscal year in the area of $1 million." (emphasis provided) This, in turn, appears to be contingent on Baywood Manufacturing Company's being granted some sort of undefined "arrangement" to be "an exclusive purchaser of parts and door sections in Wisconsin." Consequently, Mr. Westfield avers that if a court were to order future sales to Wisconsin customers other than Baywood Manufacturing Company, such as Consolidated, Mid–America would sustain "substantial business losses" in excess of $100,000.00.

The problem with Mr. Westfield's affidavit, as pointed out by the plaintiff, is that there is no support for the figure offered by Mr. Westfield as representing anticipated "substantial business losses" in excess of $100,000.00. There is no method (even in a general sense) set forth for how Mid–America came up with that figure, such as, and only by way of example, historical data

of earnings as a percentage of sales.[1] As far as the court can discern, the figure $100,000.00, is merely one that represents what Mid–America hopes to be able to earn from what it hopes to be $1 million in sales over the course of the next fiscal year (although the court has not been advised when Mid–America's fiscal year begins) to what it hopes will be an exclusive purchaser of parts and door sections in Wisconsin.[2]

■ Questions on removal are strictly construed against federal jurisdiction. *Hess v. Great Atlantic & Pac. Tea Co.*, 520 F.Supp. 373 (N.D.Ill.1981); see also *Holly Farms Corp. v. Taylor*, 722 F.Supp. 1152, 1156 (D.Del.1989) (removal strictly construed; federal court should remand if doubt exists as to right of removal). "[I]f there is any doubt as to the right of removal, ambiguities are to be resolved against removal." *Tele–Port, Inc. v. Ameritech Mobile Communications, Inc.*, 49 F.Supp.2d 1089, 1091 (E.D.Wis.1999), citing *Tom's Quality Millwork, Inc. v. Delle Vedove USA, Inc.*, 10 F.Supp.2d 1042, 1044 (E.D.Wis.1998). Stated another way, ambiguities are to be resolved against removal when doubt exists as to jurisdiction. *Jones v. Gen. Tire & Rubber Co.*, 541 F.2d 660, 663 (7th Cir.1976); see also *Stemmons v. Toyota Tsusho Am., Inc.*, 802 F.Supp. 195, 196 (N.D.Ill.1992). After all, "fundamental fairness dictates that if a federal

1. Mid–America makes the jump from stating that Baywood wishes to be the exclusive purchaser of its parts and door sections, to the allegation that an injunction would result in losses, without explaining how such losses would occur and whether such losses could be mitigated. Moreover, Mid–America presents that lost annual sales would be in excess of $100,000.00. However, lost sales is not a proper measure of damages. A more proper measure might be lost profits or some other measure of loss as provided by the UCC, see Wis.Stat. § 402.701 et seq. Mid–America presents no information regarding lost profits or its true measure of damages.

2. Recently, in *Normand v. Orkin Exterminating Co., Inc.*, 193 F.3d 908, 910 (7th Cir.1999), the Seventh Circuit stated that "[t]o

maintain a suit in which the stakes must exceed some specified minimum, the plaintiff (or the defendant, if the suit is removed) need demonstrate no more than a good faith, minimally reasonable belief that the suit might result in a judgment in excess of that amount." I do not question Mr. Westfield's good faith. Where I believe the defendant has fallen short of meeting its burden, however, is in demonstrating by a preponderance of the evidence, and with competent proof, that its belief that the suit might result in a judgment in excess of $75,000.00 is "minimally reasonable." In other words, without the defendant's presenting a more solid foundation for such a belief, I am unable to conclude that the belief (though perhaps held in good faith) is one that is "minimally reasonable."

court has doubts about its jurisdiction, it should resolve those doubts by ordering a remand.... Otherwise, the state-court-plaintiff would risk the possibility of winning a final judgment in federal court only to have it determined later on appeal that the court lacked jurisdiction. This would require the plaintiff to return to state court and relitigate the case." *Bristol–Myers Squibb Co. v. Safety Nat'l Cas. Corp.,* 43 F.Supp.2d 734, 741 (E.D.Texas 1999).

Bearing all of the foregoing in mind, I believe this action should be remanded to state court. Simply stated, the defendant has not persuaded me by a preponderance of the evidence and with competent proof that the pecuniary damages to it which a judgment in favor of the plaintiff would directly produce exceed $75,000.00. To the contrary, the evidence it has offered is far too speculative and without adequate foundation to support this court's finding that it has diversity jurisdiction over this action. Accordingly, the plaintiff's motion to remand is **GRANTED.**

**NOW THEREFORE IT IS ORDERED** that this action be and hereby is remanded to the Milwaukee County Circuit Court from which it was removed.

**DECISION AND ORDER RE: DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S REMAND ORDER, PLAINTIFF'S MOTION FOR COSTS, AND PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS**

### I. BACKGROUND

On December 23, 1999, plaintiff Consolidated Doors, Inc. ("Consolidated") filed a complaint in the Milwaukee County Circuit Court naming Mid–America Door Company ("Mid–America") as the defendant. The complaint seeks compensatory damages in the amount of $28,158.91 for breach of contract as well as injunctive relief prohibiting the defendant from ter-

minating an alleged "Authorized Dealer Contract" with plaintiff.

On January 26, 2000, the defendant removed the action to this court pursuant to 28 U.S.C. § 1441. Removal was based on diversity of citizenship and the existence of an amount in controversy in excess of $75,-000.

Thereafter, the plaintiff filed a motion seeking to have the case remanded to state court. On April 3, 2000, this court granted plaintiff's motion and ordered the action remanded to the Milwaukee County Circuit Court. As the court explained in its remand order, the defendant had failed to prove by a preponderance of the evidence that the amount in controversy exceeded $75,000.

The defendant has now filed a motion for reconsideration of the court's remand order. That motion, as well as plaintiff's motions seeking costs and Rule 11 sanctions against Mid–America, are currently before the court.

### II. DEFENDANT'S MOTION FOR RECONSIDERATION

■ The defendant bases its motion for reconsideration on Rule 60(b)(2) and (3) of the Federal Rules of Civil Procedure. Those subsections allow the court, upon motion, to relieve a party from a final judgment or order. Rule 60(b)(2) allows relief on the basis of newly discovered evidence, while Rule 60(b)(3) allows relief in cases of fraud, misrepresentation or other misconduct of an adverse party.

The defendant has not cited, nor has the court been able to discover, any reported cases in which a court has reconsidered its remand order pursuant to Rule 60(b). The reasons for this absence of case law are not difficult to discern. There is a statute that deals explicitly with post-removal procedure. Title 28 U.S.C. § 1447(d) provides:

An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, ex-

cept that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

The Supreme Court has explained that Sections 1447(c) and 1447(d) must be construed together. That is, "only remand orders issued under § 1447(c) and invoking the grounds specified therein that removal was improvident and without jurisdiction are immune from review under § 1447(d)." *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976).

Section 1447(d) has also been held to encompass a court's reconsideration of its own remand order. See, e.g., *Browning v. Navarro*, 743 F.2d 1069 (5th Cir.1984); *Three J Farms, Inc. v. Alton Box Board Co.*, 609 F.2d 112 (4th Cir.1979), cert. denied, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980); *In re La Providencia Development Corp.*, 406 F.2d 251, 252–53 (1st Cir.1969); *Aetna U.S. Healthcare v. Hoechst Aktiengesellschaft*, 67 F.Supp.2d 1242, 1244 (D.Kan.1999).

An examination of the policy concerns underlying § 1447(d) reveals the wisdom of applying the section to a court's reconsideration of its own remand order. The provision furthers two important interests. First, it fosters general judicial economy. *In re La Providencia*, 406 F.2d at 252–53 (1st Cir.1969). Reconsideration by the remanding court, like review by an appellate court, may contribute to needless delay and inefficiency. "Without § 1447(d), a party to a state action could remove the action to federal court, await remand, request reconsideration of the remand, appeal, request rehearing, and then file a petition for a writ of certiorari, all before being forced to return to state court several years later." *Hudson United Bank v. Litenda Mortgage Corp.*, 142 F.3d 151, 156 (3d Cir.1998).

Section 1447(d) also evinces a respect for state courts and principles of comity. Reversing a remand order, whether on reconsideration or on appeal, would require the federal court to intrude upon the operation of a branch of state government. This is particularly true where, as here, the state court has already received a certified copy of the remand order. Such an encroachment upon state sovereignty is not to be undertaken lightly. Particularly is this true where the interference is not expressly contemplated statutorily, as it is, for example, in 28 U.S.C. § 1441. Cf. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (holding that Congress must unequivocally express its intent to abrogate state sovereign immunity); *United States v. Bass*, 404 U.S. 336, 449, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (explaining that in "legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision.").

The issues of comity and judicial economy that are implicated by overlapping state and federal jurisdiction in diversity cases has led one court to conclude:

> Removal in diversity cases, to the prejudice of state court jurisdiction, is a privilege to be strictly construed, and the state court proceedings are to be interfered with once, at most. . . . The action must not ricochet back and forth depending upon the most recent determination of a federal court. Applying these considerations to the present case, there is no more reason for a district court being able to review its own decision, and revoke the remand, than for an appellate court requiring it to do so. Both are foreclosed; nothing could be more inclusive than the phrase 'on appeal or otherwise.' The district court has one shot, right or wrong.

*La Providencia*, 406 F.2d at 252–53.

Section 1447(d) is not the only place where Congress has spoken clearly with regard to the type of removal the defendant is seeking. Section 1446(b) provides:

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....

It is this section that gives the defendant a "second shot" at removal based upon new information or new developments. Unfortunately for defendant, this second attempt at removal must be made within 30 days after receipt of the new information. Here, the information upon which removal is sought for the second time was allegedly contained in a May 18, 2000, offer of settlement from the plaintiff. Assuming, without deciding, that this settlement offer constitutes "other paper" under Section 1446(b), the 30–day time limit for filing a notice of appeal has nonetheless passed.

The court declines to adopt a novel interpretation of Rule 60(b) and thereby allow defendant to accomplish that which two independent statutory provisions clearly prohibit. For the foregoing reasons, the defendant's motion for reconsideration is denied.

### III. PLAINTIFF'S MOTION FOR COSTS

The plaintiff seeks costs under 28 U.S.C. 1447(c), which in part provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The plaintiff claims to have incurred attorney fees of $10,462.50 "for services related to the Motion to Remand and Motion for Reconsideration of the Remand Order and the supporting briefs filed with the court."

The court is not now issuing an order remanding the case. The court issued its only remand order with respect to this action on April 3, 2000. That order was followed by a motion by plaintiff seeking costs pursuant to § 1447(c). The motion was denied.

Some portion of the $10,462.50 sought by the plaintiff represents costs incurred as a result of the original motion to remand. The court has already, by an order dated May 11, 2000, denied plaintiff those costs. The remainder of the costs—that is, those incurred as a result of defendant's motion for reconsideration—are not covered by the express language of § 1447(c).

I do not doubt that Consolidated has incurred substantial expense with respect to this action. As I explained, however, in denying plaintiff's first motion for costs:

[A]s Consolidated has pointed out in its submissions, if it is ultimately successful on its claim under the Wisconsin Fair Dealership Law, Wis.Stats. § 135.01, et seq., it can recover 'the actual costs of the action, including reasonable actual attorney fees.' Wis.Stats. § 135.06.... Such being the case, Consolidated may yet be able to recover the costs and attorney fees it incurred in fighting to have this action remanded to state court.

The plaintiff's motion for costs is denied.

### IV. PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

Plaintiff also moves for sanctions under Rule 11 of the Federal Rules of Civil Procedure, arguing that the defendant violated the Rule "by preparing and causing to have filed an affidavit containing false statements to support its Notice of Removal" and "by filing a Motion to Reconsider a Remand Order granted by the court on April 3, 2000 and for continuing to pursue the motion to reconsider after being informed that the existing law did not allow reconsideration or appeal of Remand Orders granted under 28 U.S.C. section 1447(d)."

#### A. Defendant's Allegedly False Statements

■ Defendant's Notice of Removal, filed January 26, 2000, averred, "Pursuant

to 28 U.S.C. section 1332(a) the amount in controversy exceeds the sum or value of $75,000 in loss of earnings to those named defendants were the court to grant the plaintiff's restraining order." Defendant submitted a supporting affidavit signed by John Westfield, Mid–America's vice-president and chief financial officer. The affidavit read in part:

> 7. Baywood Manufacturing Company as a customer has required an arrangement to be an exclusive purchaser of parts and door sections in Wisconsin.

> 8. Consequently, a forced sale to other customers in Wisconsin would result in substantial business losses to Mid–America Door Company which, in the aggregate, are substantially in excess of $100,000 as represented by the annual sales.

Plaintiff alleges that these two paragraphs appear to be false. As support for this conclusion, plaintiff points to a June 8, 2000, deposition. At that deposition, Baywood Manufacturing Company's General Manager, Paul Buntin, was asked the following question:

> Has there ever been any discussions with BayWood Manufacturing Company with Mid–America where it was required that you be the exclusive purchaser of parts and door sections in Wisconsin?

Mr. Buntin responded, "Not that I'm aware of."

Mr. Buntin's deposition also contained the following exchange:

> Q. Did you ever tell Mid–America Door Company that if they sold to any other customer in Wisconsin that you would stop doing business with Mid–America Door Company?

> A. Did I ever tell them that? Is that the question?

> Q. Right.

> A. I did not.

Finally, at the deposition of Bay Industries President Arnold W. Schmidt, this exchange took place:

> Q. In the summer or fall of 1999, did you have any discussions with Mid–America Door Company regarding a new purchase arrangement between BayWood Manufacturing Company and Mid–America Door Company?

> A. I did not.

> Q. Did you have any discussions with anybody at Mid–America Door Company regarding their refusing to sell goods to Consolidated Door Company?

> A. No, I did not.

Plaintiff contends that, from this deposition testimony, it appears that paragraphs 7 and 8 of the Westfield affidavit contain false statements. Plaintiff further contends that,

> [a]fter the false statements were discovered by deposition of Baywood Manufacturing Company the defendant's attorney … failed to take appropriate action to inform the court of the false statements or provide evidence to establish that the statements were not false. Instead, defendant's attorney … continues to advocate the statements of the affidavit even after the plaintiff's attorney has pointed out that the statements are apparently false.

Rule 11(b) provides:

> By presenting to the court (whether by signing, filing or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argu-

ment for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support. . . .

The deposition testimony cited does not, either as a matter of logic or of rhetoric, contradict the representations made in paragraphs 7 and 8 of the Westfield affidavit. Mr. Buntin testified that he was not aware of an arrangement under which Baywood was required to be the exclusive purchaser of parts and door sections in Wisconsin; there was no testimony that such an agreement did not exist. Mr. Buntin also testified that he did not tell Mid–America that Baywood would stop doing business with them if they sold to another customer in Wisconsin. This in no way demonstrates that no one told Mid–America that this would happen. Nor does it demonstrate that Mid–America could not have somehow inferred (for example, from Baywood's past conduct) that it was likely to happen.

Even if the depositions did contradict the statements contained in the Westfield affidavit, that would in no way establish that the former was true and the latter false. As a more fundamental matter, an attorney who submits a pleading, written motion, or other paper to the court need not be able to demonstrate conclusively that the allegations contained therein are true or "that the party will prevail with respect to its contention regarding the fact." Fed.R.Civ.Pro. 11, advisory committee's notes. The certification is only that, after reasonable inquiry, the party believes that there is evidentiary support for the allegation. See id.

■ Deciding whether a Rule 11 violation has occurred in this case is not as simple as holding the two paragraphs of the affidavit up to the deposition testimony and seeing whether the former squares with the latter. Rather, an adequate Rule 11 inquiry would require the court, inter alia, to determine how much inquiry was

undertaken by defense counsel and to assess the evidentiary support for the allegations made in the Westfield affidavit. The latter would be particularly cumbersome in light of the fact that, at this stage in the litigation, the evidentiary record has not been well-developed. In short, the court would need to conduct a "mini-trial" in order to decide the issue. While the primary goal of Rule 11 is the deterrence of baseless filings, pursuit of that goal must be tempered by a concern for avoiding a proliferation of satellite litigation. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The extensive additional inquiry that a Rule 11 determination would entail is a factor that weighs heavily against granting this motion.

## B. Defendant's Motion for Reconsideration

■ The plaintiff also argues that Rule 11 sanctions are warranted for the defendant's filing of a motion to reconsider the court's earlier remand order. In addition to the facts set forth in Section I, **supra,** the plaintiff alleges that on July 22, 2000, it informed the defendant's attorney that 28 U.S.C. § 1447(d) did not allow reconsideration of a remand order that was based on 28 U.S.C. § 1447(c).

Under Rule 11(b)(2), an attorney certifies that any motion presented to the court contains only those legal contentions "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." While this section of Rule 11 seeks to further the primary goal of deterring baseless claims, it attempts to do so in a way that does not stifle lawyer creativity. See *Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. 2447. That explains the Rule's accommodation of nonfrivolous arguments that are not necessarily warranted by existing law.

Existing law clearly does not support the defendant's position with regard to

reconsideration of the court's remand order. Again, no circuit has ever granted such a motion based on Rule 60(b). In fact, no circuit appears to have so much as considered the issue. The defendant cannot, therefore, be said to be arguing for the extension, modification, or reversal of existing Rule 60(b) law.

The defendant's motion is most reasonably read as an argument for the establishment of new law. As long as such an argument is not frivolous, it is immune from Rule 11 sanctions. Rule 11 itself provides no standard for determining whether an argument is "frivolous." Nor have courts and commentators been successful in establishing a consistent and useful definition of the term. **See** Samuel J. Levine, **Seeking a Common Language for the Application of Rule 11 Sanctions: What is "Frivolous"?**, 78 Neb. L.Rev. 677, 679–86 (1999); Carl Tobias, **The 1993 Revision to Federal Rule 11**, 70 Ind.L.J. 171, 196 (1994). The Seventh Circuit defines a frivolous argument as one that is "baseless and made without a reasonable and competent inquiry." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir.1998). The court does not now possess adequate information to assess the reasonableness of the defendant's inquiry. As the standard enunciated by the Seventh Circuit makes clear, however, the court can find that an argument is nonfrivolous if it determines that it is not baseless.

In this case, the defendant's position is made more tenable by the somewhat inartful drafting of Rule 60(b). While the Rule allows the court to relieve a party from final orders, nowhere does it define such orders. The court's remand order could reasonably be understood to be "final." The order had been entered and it had the effect of terminating the proceedings before the court. At least syntactically, the defendant has some basis for arguing that Rule 60(b) covers the type of motion being made.

Although it is the only legal authority the defendant cites, Rule 60(b) cannot be the court's sole focus in deciding this motion. Given the substantial authority construing 28 U.S.C. § 1447(d) to prohibit reconsideration of remand orders, accepting the defendant's argument would also require modification or reversal of that body of law. Like arguments for the establishment of new law, arguments for the modification or reversal of existing law are explicitly allowed by Rule 11 as long as they are not frivolous.

As with Rule 60(b), the language of 28 U.S.C. § 1447(d) provides some basis for the defendant's argument. Section 1447(d) provides that a remand order "is not reviewable on appeal or otherwise." The use of the term "reviewable" suggests that the statute prohibits another body from reexamining a court's order. The term does not **per se** extend to reconsideration by the issuing court, although it is certainly reasonable to interpret it as extending that far (as most courts have and as this court now does).

Further, some courts have allowed remand orders to be reconsidered, albeit under circumstances not present in this action. Some circuits have held that the remanding court retains the power to reconsider its order until a copy of it is mailed to the state court. See, e.g., *Hunt v. Acromed Corp.*, 961 F.2d 1079, 1081 (3d Cir.1992); *Seedman v. U.S. Dist. Ct. for the Central District of Florida*, 837 F.2d 413, 414 (9th Cir.1988); *Browning v. Navarro*, 743 F.2d 1069, 1078 (5th Cir.1984). It has also been held that a subsequent district court is not bound by a prior district court's remand order when that order was based on the prior court's erroneous determination that it lacked subject matter jurisdiction. *Sawyer v. Commonwealth Edison Co.*, 847 F.Supp. 96, 98 (N.D.Ill. 1994). While these cases are factually distinguishable from the present one, they do suggest that the defendant's position is not entirely baseless. Cf. *Simon DeBartolo Group, L.P. v. The Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir. 1999) (explaining that Rule 11 frivolous-

ness requires that it be "clear under existing precedents that there is **no chance of success** and **no reasonable argument** to extend, modify or reverse the law as it stands.") (emphasis added).

In short, the defendant's conduct does not rise to the level of egregiousness that would move this court to exercise its discretion under Rule 11 in an attempt to deter like conduct while running the risk of chilling creative advocacy and spawning satellite litigation.

## V. CONCLUSION

In conclusion, and for all of the foregoing reasons, the court denies the defendant's motion for reconsideration of the court's remand order. The court also denies the plaintiff's motions for costs and for Rule 11 sanctions.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for reconsideration of the court's remand order be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that the plaintiff's motion for costs be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that the plaintiff's motion for Rule 11 sanctions be and hereby is **DENIED.**