ON REHEARING EN BANC

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1839

JOYCE BARLOW,

        Plaintiff - Appellee,

    v.

COLGATE PALMOLIVE COMPANY,

        Defendant – Appellant,

    and

JOHN CRANE-HOUDAILLE, INCORPORATED; E.L. STEBBING & COMPANY, INC.; HAMPSHIRE INDUSTRIES, INC., f/k/a John H. Hampshire Company; UNIVERSAL REFRACTORIES COMPANY; J.H. FRANCE REFRACTORIES COMPANY; THE GOODYEAR TIRE & RUBBER COMPANY, f/k/a Kelly Springfield Tire Company; MCIC, INC., and its remaining Director Trustees, Robert I. McCormick, Elizabeth McCormick and Patricia Schunk; CBS CORPORATION, a Delaware Corporation f/k/a Viacom, Inc., Successor by merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation; METROPOLITAN LIFE INSURANCE COMPANY; A.W. CHESTERTON COMPANY; CERTAINTEED CORPORATION, individually and as successor to Bestwall Gypsum Co.; KAISER GYPSUM COMPANY, INC.; UNION CARBIDE CORPORATION; INTERNATIONAL PAPER COMPANY, individually and as successor in interest to Champion International Corporation and U.S. Plywood Corp.; BAYER CROPSCIENCE, INC., individually and as successor in interest to Benjamin Foster Co., Amchem Products, Inc., H.B. Fuller Co., Aventis CropScience USA, Inc., Rhone-Poulenc AG Company, Inc., Rhone-Poulenc, Inc. and Rhodia, Inc.; COOPER INDUSTRIES, INC., individually and as successors in interest to Crouse Hinds Co.; PFIZER CORPORATION; SCHNEIDER ELECTRIC USA, INC., f/k/a Square D Company, individually and as successor in interest to Electric Controller and Manufacturing Co.; GEORGIA-PACIFIC,

LLC, individually and as successor to Bestwall Gypsum Co.; FOSTER WHEELER CORPORATION; THE WALLACE & GALE ASBESTOS SETTLEMENT TRUST; CONWED CORPORATION; GENERAL ELECTRIC COMPANY; GEORGIA PACIFIC CORPORATION, individually and as successor in interest to Bestwall Gypsum Co.,

Defendants.

-------------------

## No. 13-1840

-------------------

CLARA G. MOSKO,

Plaintiff - Appellee,

v.

COLGATE PALMOLIVE COMPANY,

Defendant – Appellant,

and

JOHN CRANE-HOUDAILLE, INCORPORATED; E.L. STEBBING & CO., INCORPORATED; HAMPSHIRE INDUSTRIES, INC., f/k/a John H. Hampshire Company; UNIVERSAL REFRACTORIES COMPANY; J.H. FRANCE REFRACTORIES COMPANY; THE GOODYEAR TIRE & RUBBER COMPANY, f/k/a Kelly Springfield Tire Company; MCIC, INC., and its remaining Director Trustees, Robert I. McCormick, Elizabeth McCormick and Patricia Schunk; CBS CORPORATION, a Delaware Corporation f/k/a Viacom, Inc., f/k/a Westinghouse Electric Corporation; METROPOLITAN LIFE INSURANCE COMPANY; A.W. CHESTERTON COMPANY; CERTAINTEED CORPORATION, individually and as successor to Bestwall Gypsum Co.; KAISER GYPSUM COMPANY, INC.; UNION CARBIDE CORPORATION; INTERNATIONAL PAPER COMPANY, individually and as successor in interest to Champion International Corporation and U.S. Plywood Corp.; BAYER CROPSCIENCE, INC., individually and as successor in interest to Benjamin Foster Co., Amchem Products, Inc., H.B. Fuller Co., Aventis CropScience USA, Inc., Rhone-Poulenc AG Company, Inc., Rhone-Poulenc, Inc. and Rhodia, Inc.; COOPER INDUSTRIES, INC., individually and as successors in interest to Crouse Hinds Co.; PFIZER CORPORATION; SCHNEIDER ELECTRIC USA, INC., f/k/a Square D Company, individually and as successor in interest to

2

Electric Controller and Manufacturing Co.; FOSTER WHEELER CORPORATION; THE WALLACE & GALE ASBESTOS SETTLEMENT TRUST; CONWED CORPORATION; GEORGIA-PACIFIC, LLC, individually and as successor to Bestwall Gypsum Co.; 3M COMPANY; MALLINCKRODT, INC.; CROWN, CORK & SEAL CO., INC.; KOPPERS COMPANY, INC.; WALTER E. CAMPBELL CO., INC.; KRAFFT-MURPHY COMPANY, individually and as successor to National Asbestos Company, a dissolved Delaware Corporation; AC&R INSULATION CO., INC.; COTY, INC.; JOHNSON & JOHNSON; LUZENAC AMERICA INC.; R.T. VANDERBILT COMPANY, INC.; BAYER CORPORATION, as successor in interest to Sterling Drug, Inc., and Sterling-Winthrop Inc.; GENERAL ELECTRIC COMPANY,

Defendants.

———————————

Appeals from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, Senior District Judge. (1:12-cv-01780-WMN; 1:12-cv-01781-WMN)

———————————

Argued: September 18, 2014            Decided: November 25, 2014

———————————

Before NIEMEYER, KING, SHEDD, DUNCAN, WYNN, DIAZ, and FLOYD, Circuit Judges, and DAVIS, Senior Circuit Judge.

———————————

Reversed and remanded by published opinion. Judge Floyd wrote the opinion, in which Judges Niemeyer, King, Shedd, Duncan, and Diaz joined. Judge Wynn wrote a separate opinion concurring in part and dissenting in part. Senior Judge Davis wrote a dissenting opinion.

———————————

**ARGUED**: Faith Elizabeth Gay, QUINN, EMANUEL, URQUHART & SULLIVAN, LLP, New York, New York, for Appellant. Jeffrey John Utermohle, LAW OFFICES OF PETER G. ANGELOS, Baltimore, Maryland, for Appellees. **ON BRIEF:** Thomas P. Bernier, SEGAL MCCAMBRIDGE SINGER & MAHONEY, Baltimore, Maryland; William B. Adams, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, New York, for Appellant. Jennifer L. Lilly, Thomas Kelly, Craig Silverman, LAW OFFICES OF PETER G. ANGELOS, Baltimore, Maryland, for Appellees.

———————————

FLOYD, Circuit Judge:

This appeal involves the interplay between 28 U.S.C. § 1447(d), which prohibits federal courts from reviewing orders remanding cases to state court, and Federal Rules of Civil Procedure 11 and 60(b)(3), which provide means for federal courts to remedy and deter the perpetration of fraud on the courts. Despite strong evidence that the plaintiffs in these consolidated actions misrepresented their intent to pursue claims against certain defendants, the lower court found that § 1447(d) deprived it of jurisdiction to either impose certain sanctions under Rule 11 or afford relief under Rule 60(b)(3). Because we conclude that using these rules to safeguard the courts from fraud does not amount to the "review" proscribed by § 1447(d), we reverse.

I.

A.

This action arises from asbestos litigation brought by two individuals in Maryland state court. Plaintiffs Joyce Barlow and Clara Mosko separately sued Colgate-Palmolive Company--among numerous other companies[1]--and asserted that each of the defendants' products had at some point exposed them to asbestos.

---

[1] Barlow named 23 defendants. (J.A. 47-53.) Mosko named 36 defendants. (Id. at 56-65.)

As to Colgate, Plaintiffs' theory was that the company's "Cashmere Bouquet" line of powder makeup products contained harmful levels of asbestos and had thereby contributed to Plaintiffs' health problems.

Despite Plaintiffs' joinder of in-state defendants, Colgate removed the two cases to federal court on the basis of diversity of citizenship--asserting fraudulent joinder of the in-state defendants, and alleging that Plaintiffs' deposition testimony and interrogatory responses demonstrated that they did not intend to pursue a claim against any defendant other than Colgate, a diverse defendant.[2]

---

[2] A federal court has subject-matter jurisdiction to hear a case if (1) "the matter in controversy exceeds the sum or value of $75,000" and (2) there is complete diversity among defendants and plaintiffs. 28 U.S.C. § 1332(a); Turner v. JP Morgan Chase Bank, N.A., 543 F. App'x 300, 301 (4th Cir. 2013) (per curiam). If a case meets these conditions, but a plaintiff files suit in state court, defendants may remove a case to federal court. See 28 U.S.C. § 1446. "[I]t is difficult for a defendant to remove a case if a nondiverse defendant has been party to the suit." Turner, 543 F. App'x at 301 (citation and brackets omitted). A defendant may accomplish this, however, through the doctrine of fraudulent joinder, which allows a district court to disregard the citizenship of certain nondiverse defendants and assume jurisdiction. Id. (citation omitted). "[T]o establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [A] that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [B] that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Id. (citation omitted).

Plaintiffs' counsel[3] then moved to remand the cases to state court, arguing that Plaintiffs had viable claims against the non-diverse defendants. In a motion for remand in Barlow's case, counsel represented the following:

> [T]here is some circumstantial evidence to suggest Ms. Barlow could possibly have been exposed to asbestos-containing products while working at RMR Corporation. . . . The evidence is certainly circumstantial, but it cannot be said that there is no possibility that a claim could be successfully proven against any of the non-diverse defendants.

(J.A. 106.) In support, Barlow's counsel cited Barlow's statement to a physician on or about June 21, 2011, that she "may have been" exposed to asbestos while working the assembly lines of RMR Corporation.[4] (Id. at 96, 145.) Although Plaintiffs' counsel admitted that the evidence of liability was

---

[3] We use "Plaintiffs' counsel" to refer to both Barlow's attorney and Mosko's attorney because their attorneys are the same person, or at least hail from the same law firm. See Restatement (Third) of the Law – The Law Governing Lawyers § 14 cmt. h (2000) ("When a client retains a lawyer [who is part of a law firm], the lawyer's firm assumes the authority and responsibility of representing that client, unless the circumstances indicate otherwise."). Different attorneys from the Law Offices of Peter G. Angelos represented Barlow and Mosko at different stages of litigation: Jennifer Lilly signed Barlow's and Mosko's respective motions for remand in federal court, but Thomas Kelly signed Barlow and Mosko's joint motion for consolidation of their cases into a trial group.

[4] Barlow later contradicted this statement at her deposition, where she admitted that she did not believe that she was "exposed to asbestos at any time as a result of [her] employment at RMR Corporation" and that the information she relayed to her physician was based on gossip, rumor, and hearsay. (J.A. 131, 133, 137.)

6

hardly "unequivocal," counsel maintained that Barlow's testimony showed "that there is a possibility that Ms. Barlow could successfully pursue a claim against the non-diverse defendants." (Id. at 114.)

Based on the above representations, the district court (Judge Nickerson) remanded Barlow's case to state court. The district court relied solely on the claim that Barlow was exposed to asbestos at RMR Corporation: "Barlow argues that her joinder of the in-state defendants was not fraudulent because there remains a possibility that she was exposed to asbestos while working at RMR Corporation . . . . As a result, the Court finds that joinder of the in-state defendants here was not fraudulent . . . ." (Id. at 367-68.)

Similarly, in Mosko's case, Plaintiffs' counsel represented that she may have a viable claim against at least one of the non-diverse defendants:

> [I]t was certainly plausible at the time [that Mosko] filed her Complaint that local defendants should be implicated. . . . In fact, Plaintiff's counsel do have some circumstantial evidence that Ms. Mosko may have been exposed to asbestos at the Department of Agriculture in the form of invoices [from an in-state defendant, Walter E. Campbell Co., Inc.].

(Id. at 247.)  Based on the above representations,[5] the district court (Judge Quarles) found a possibility that Ms. Mosko could successfully pursue a claim against the non-diverse defendants and remanded Mosko's case to state court.  (Id. at 351-61.)  In doing so, the district court relied solely on the claim that Mosko was exposed to asbestos at the Department of Agriculture (DOA) building: "Mosko has shown more than a 'glimmer of hope' of recovering against . . . an in-state defendant[] for exposure during the renovations in the DOA building.  Therefore, removal was improper."  (Id. at 358-59.)

## B.

Shortly after returning to state court, Plaintiffs filed a joint motion to consolidate their cases with two other asbestos-related cases.[6]  Colgate opposed the motion, arguing that it could not receive a fair trial in a consolidated proceeding because the alleged sources of asbestos (other than Cashmere Bouquet) were too different among the cases.  In a reply brief,

---

[5] Plaintiffs' counsel made these statements despite Mosko admitting at a deposition on May 29, 2012, that she did not believe that she was exposed to asbestos while working at the Department of Agriculture.

[6] The district court handed down remand orders in Mosko's and Barlow's cases on September 21, 2012, and November 1, 2012, respectively.  The joint motion was filed eight days after the remand in Barlow's case.

8

Plaintiffs made the following statements, which contradict their representations to the federal district court judges:

> [Plaintiffs] allege exposure to asbestos-containing Cashmere Bouquet powder products only and do not allege exposure to any other asbestos, asbestos-containing products or asbestos-containing dust in any other form. . . . Colgate attempts to highlight alleged differences in Plaintiffs' worksites and occupations as well as their alleged exposures to [other] asbestos-containing products. However, neither Plaintiffs' worksites nor their occupations are relevant to this consolidation review because each of the Plaintiffs were exposed, in their homes, to asbestos-containing Cashmere Bouquet only. . . . The occupations or worksites of the Plaintiffs should not affect the consolidation of these cases for trial because not one of the Plaintiffs testified that they were exposed to asbestos as a result of their employment. . . . In short, there is absolutely no evidence to indicate or even suggest that the Plaintiffs were exposed to asbestos in any form other than Cashmere Bouquet.

(J.A. 474–76 (paragraph breaks omitted) (emphases added).)

At a hearing on Plaintiffs' consolidation motion, the state court judge told Plaintiffs' counsel, "I can't believe you actually told Judge Nickerson and Judge Quarles one thing and tell me another." (Id. at 494.) The judge then posed the following question to Plaintiffs' counsel: "It is a one-defendant case, right?" Counsel answered, "Yes." (Id.)

C.

After the post-remand hearing, Colgate moved in the district court for relief from Plaintiffs' purported misrepresentations. Specifically, Colgate sought relief under Rule 11 of the Federal Rules of Civil Procedure and asked that the district court sanction Plaintiffs' attorneys by imposing monetary penalties, referring them to the state bar, and awarding any other relief that the district court deemed appropriate. The nearly identical motions in Barlow's and Mosko's separate cases were consolidated before Judge Nickerson. A hearing was held on these motions, at which Plaintiffs' counsel claimed that the statements made in federal court were "legal conclusion[s]" and "legal argument[s]," not "factual contention[s]" subject to Rule 11 sanctions. (Id. at 1070–71.) Post-hearing, Colgate moved for relief under Rule 60(b)(3) as a supplement to its Rule 11 motions. In its Rule 60(b)(3) motions, Colgate sought vacatur of the remand orders.

On June 26, 2013, Judge Nickerson "denied" Colgate's motions. (Id. at 1107, 1109.) Although the district court characterized the allegations in the motions as "substantial" and acknowledged that the different statements by Plaintiffs' counsel "appear to be in sharp conflict," the court concluded that 28 U.S.C. § 1447(d) deprived it of jurisdiction to vacate or strike its remand orders. (Id. at 1106, 1108.) The district

10

court further stated that "[w]ere the Court to consider other possible sanctions, it would decline to impose them." (Id.) It was "not convinced that counsel's conduct is sanctionable" because the alleged misrepresentations were "attributable to different attorneys in markedly different litigation contexts." (Id.) This appeal followed.[7]

## II.

We review questions of law, including a lower court's determination of its subject-matter jurisdiction, de novo. Trans Energy, Inc. v. EQT Prod. Co., 743 F.3d 895, 900 (4th Cir. 2014); Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005). We review a district court's decision on Rule 11 and Rule 60(b)(3) motions for an abuse of discretion. Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 150 (4th Cir. 2002) (stating the standard of review for Rule 11 motions); Green v. Foley, 856 F.2d 660, 665 (4th Cir. 1988) (stating the standard of review for Rule 60(b) motions).

---

[7] The original panel consisted of Judge Davis, Judge Floyd, and Judge Cogburn, United States District Judge for the Western District of North Carolina, sitting by designation. A majority affirmed the district court's determination "insofar as it ruled that it lacked jurisdiction." Barlow v. Colgate Palmolive Co., 750 F.3d 437, 440 (4th Cir. 2014). On June 5, 2014, the Court granted Colgate's petition for rehearing en banc.

11

III.

This appeal concerns whether a district court retains jurisdiction to issue sanctions under Rule 11 and to vacate a remand order under Rule 60(b)(3) following remand of the case to the state court. The propriety of such relief requires us to assess the interplay between these rules and 28 U.S.C. § 1447(d).

A.

The federal removal statute prohibits review of orders remanding removed cases:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 [cases against federal officers] or 1443 [certain civil rights cases] of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d). This statute generally precludes review of a remand order if the remand is for lack of subject-matter jurisdiction or for defects in the removal procedure. Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 229, 234 (2007). For example, a district court may not review--pursuant to a motion for reconsideration--an order remanding a case for lack of diversity jurisdiction, even in the face of evidence of fraudulent joinder. In re Lowe, 102 F.3d 731, 733-34 (4th Cir.

12

1996).  Review is prohibited, moreover, "even if the remand order is 'manifestly, inarguably erroneous.'"  In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 582 (4th Cir. 2006) (quoting Mangold v. Analytic Servs., Inc., 77 F.3d 1442, 1450 (4th Cir. 1996) (Phillips, J., concurring)).  This strict treatment serves the purposes of comity and judicial economy, as an action "must not ricochet back and forth depending upon the most recent determination of a federal court."  Three J Farms, Inc. v. Alton Box Bd. Co., 609 F.2d 112, 115 (4th Cir. 1979) (quoting In re La Providencia Dev. Corp., 406 F.2d 251, 252 (1st Cir. 1969)).

This Circuit has recognized three exceptions to § 1447(d)'s limit on reviewing remand orders: (1) when the remand was not based on a determination either that the court lacked subject-matter jurisdiction or that there was a defect in the removal procedure; (2) when the review is of a "collateral decision that is [logically and factually] severable from the remand order" and that had a "conclusive effect upon the parties' substantive rights"; and (3) when the district court exceeds the scope of its authority in issuing a remand order.  In re Blackwater Sec. Consulting, LLC, 460 F.3d at 582–83, 586.  None of these exceptions apply here.  First, the remand orders were explicitly based on a determination that the district court lacked subject-matter jurisdiction.  Second, the remand orders had no "conclusive effect" on the parties' substantive rights.  And

13

third, no party contends that the district court exceeded its authority.

Nevertheless, as discussed below, the types of relief provided by Rule 11 and Rule 60(b)(3) do not involve "review" as proscribed by § 1447(d). Accordingly, Colgate's motions never implicated § 1447(d) in the first instance.

B.

Rule 11(b) specifically authorizes courts to impose sanctions for misrepresentations. It requires attorneys to submit a filing in good faith and without knowledge of the falsity of its contents:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief . . . (1) it is not being presented for any improper purpose . . . [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b). If a court "determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation," Fed. R. Civ. P. 11(c)(1), although the sanction "must be limited to what suffices to deter

14

repetition of the conduct or comparable conduct by others similarly situated," Fed. R. Civ. P. 11(c)(4).

The Rule 11 jurisdictional issue before us involves two similar but distinct questions: (1) whether a district court retains jurisdiction to impose sanctions after remanding an action to state court and (2) whether an appeals court can review a district court's determination regarding the imposition of sanctions in such a circumstance. As set forth below, we answer both questions in the affirmative.

The Supreme Court itself has spoken on these issues. In Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 389-90 (1990), the district court granted the defendants' Rule 11 motion more than three years after the plaintiff had voluntarily dismissed the case. On appeal, the Supreme Court stated that "a voluntary dismissal does not expunge the Rule 11 violation," and "a court must have the authority to consider whether there has been a violation of [Rule 11] regardless of the dismissal of the underlying action." Id. at 395. The Court noted that "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending" and that "[t]he filing of complaints, papers, or other motions without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction." Id. at 395, 398.

15

Two years later the Court reached a similar conclusion in Willy v. Coastal Corp.:

> [Although a] final determination of lack of subject-matter jurisdiction of a case in a federal court . . . precludes further adjudication of it[,] . . . such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction.

503 U.S. 131, 137 (1992). Citing Cooter & Gell, the Court reiterated that Rule 11 sanctions are "collateral to the merits" of an action and that "[t]he interest in having rules of procedure obeyed . . . does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction." Id. at 137, 139. Several appeals courts have relied on Willy, along with Cooter & Gell, in holding that district courts maintain jurisdiction after remand to order Rule 11 sanctions. E.g., Bryant v. Britt, 420 F.3d 161, 164 (2d Cir. 2005) (per curiam) (citing Willy, 503 U.S. at 137-38); Lazorko v. Pa. Hosp., 237 F.3d 242, 247 (3d Cir. 2000) (citing Willy, 503 U.S. at 139).

This Court's own caselaw is in accord. In Anton Leasing, Inc. v. Engram, the district court granted the plaintiff's motion to remand the case to state court for failure to remove the case to the proper venue. 846 F.2d 69, at *1 (4th Cir. 1988) (per curiam) (unpublished table decision). Prior to the

16

remand, the plaintiff requested costs and fees. Id. The defendant "failed to respond to [the plaintiff's] motion, and the district court granted [the] motion to remand and dismissed the case from the docket. The court awarded no costs or fees." Id.

Then--after remand--the defendant filed a motion in the district court to transfer venue to cure his prior error. Id. The plaintiff opposed this motion and again requested attorney's fees, which the district court awarded. Id. The defendant appealed. On appeal, this Court held that although "the district court was without jurisdiction to rule on the transfer motion, . . . the court had jurisdiction to review the [post-remand] request for just costs and that that part of the order is appealable." Id. (citing News-Texan, Inc. v. City of Garland, 814 F.2d 216, 220 (5th Cir. 1987), and Vatican Shrimp Co. v. Solis, 820 F.2d 674, 679-80 (5th Cir. 1987) (both Rule 11 cases)).

As these cases demonstrate--and as we reiterate here--district courts have jurisdiction to decide Rule 11 sanctions motions on the merits, even when they are filed after the

underlying action is remanded to state court. It is unclear whether the district court in this case recognized as much.[8]

After declining to vacate the remand orders, the district court continued that it would deny relief "[w]ere the Court to consider other possible sanctions." (J.A. 1106, 1108.) This statement implicitly acknowledges that the court was not making a determination on the merits in regard to sanctions other than vacatur, but the orders fail to explicitly state why. On one hand, it appears that the court thought that Colgate sought only vacatur. Thus, the district court would naturally treat its consideration of other sanctions as only hypothetical--knowing that it would have jurisdiction to consider such sanctions if they were sought. On the other hand, one can construe the discussion as controlled by the district court's determination in the directly preceding paragraph that it lacked jurisdiction to afford relief under § 1447(d). In other words, the court was opaquely saying that if it "were" to have jurisdiction to consider Rule 11 sanctions, it would decline to issue any.

---

[8] Although the district court's reasoning in denying the motions is somewhat opaque, one aspect of the orders is clear: the district court declined vacating the remand orders as a Rule 11 sanction. (J.A. 1106-09.) Indeed, there is no basis in using Rule 11 as a means to vacate a remand order and to return a case to federal court. Cf. Fed. R. Civ. P. 11(c)(4) (listing possible sanctions, none of which include striking an order); 5A Charles Alan Wright et al., Federal Practice and Procedure § 1336.3 (3d ed. 2004) (discussing the variety of permitted nonmonetary sanctions under Rule 11).

18

Ultimately, however, why the district court denied other Rule 11 sanctions is not dispositive to this appeal's outcome. Because we reverse the orders for erroneously holding that the court lacked jurisdiction to consider Rule 60(b)(3) motions, infra Part III.C, we simply remand the cases for reconsideration of Colgate's motions in full and in light of this opinion, see infra Part IV.

## C.

We further find that § 1447(d) does not limit a court's authority to provide relief--in this case, through vacatur--from a fraudulently obtained remand order under Rule 60(b)(3). Critically, § 1447(d) prohibits "reviewing" an order, but it does not prohibit "vacating" an order as permitted by Rule 60(b)(3). This distinction is not merely semantic. Rather, as several fundamental tenets of statutory construction demonstrate, it is a distinction with an important difference. Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 546 (1947) ("Exactness in the use of words is the basis of all serious thinking." (citation omitted)); Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."); Perrin v. United States, 444 U.S. 37, 42 (1979)

19

("[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

Rule 60(b)(3) provides that a court "may relieve a party" from a "final judgment, order, or proceeding" for "fraud . . . , misrepresentation, or misconduct by an opposing party." Rather than assess the merits of a judgment or order, it focuses on the unfair means by which a judgment or order is procured. Schultz v. Butcher, 24 F.3d 626, 631 (4th Cir. 1994); see also Gonzalez v. Crosby, 545 U.S. 524, 532 (2005) (distinguishing a Rule 60(b)(3) motion as not attacking "the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings").

We conclude that Colgate seeks vacatur based on a collateral consideration--Colgate's allegation that the remand orders were procured through attorney misconduct--rather than on the remands' merits. In doing so, we adopt the Eleventh Circuit's well-reasoned analysis in Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279 (11th Cir. 1999). There, the Eleventh Circuit correctly recognized that vacatur of a remand order does not necessarily constitute a proscribed review of a remand decision. Id. at 1288. This is because vacatur may be available even when review (defined as "reconsideration; second view or examination; revision; consideration for purposes of correction") is precluded. Id.

20

(citing U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 22–23 (1994), and Black's Law Dictionary 1320 (6th ed. 1990)).  Thus, if a court vacates an order for "reasons that do not involve a reconsideration or examination of its merits," then there is no review of the order, and a court does not run afoul of § 1447(d)'s prohibition on review.  Id.; see also Tramonte v. Chrysler Corp., 136 F.3d 1025, 1028 (5th Cir. 1998) ("[V]acatur of the remand order would . . . not constitute a review of the merits of that order, prohibited by 28 U.S.C. § 1447(d).").

Admittedly, three circuits--in unpublished opinions--have ruled that § 1447(d) deprives courts of jurisdiction to afford relief under Rule 60(b)(3).[9]  Wachovia Mortg. FSB v. Marquez, 520 F. App'x 783, 785 (11th Cir. 2013) (per curiam); Ysais v. Ysais, 372 F. App'x 843, 844 (10th Cir. 2010); Lindo v. Westlake Dev. Co., 100 F.3d 963, at *1 (9th Cir. 1996).  None of these non-

---

[9] Besides these decisions from our sister circuits, two district courts have ruled on the issue, finding that they lacked jurisdiction to grant relief under Rule 60(b)(3)-- determinations apparently influenced by the lack of binding precedent on this specific issue, in the face of a bounty of cases applying § 1447(d) in other contexts.  See Omi's Custard Co. v. Relish This, LLC, No. 04-cv-861-DRH, 2006 WL 2460573, at *2-3 (S.D. Ill. Aug. 24, 2006) (noting the lack of precedent on the issue and concluding that relief is barred); Consol. Doors, Inc. v. Mid-America Door Co., 120 F. Supp. 2d 759, 764-66 (E.D. Wis. 2000) (declining "to adopt a novel interpretation" of Rule 60(b) in ruling on the party's "motions for reconsideration" under subsections (2) and (3)).

21

binding, unpublished opinions are persuasive, however. Simply put, those opinions--with minimal analysis and in the context of appeals brought by pro se litigants--failed to consider what relief under Rule 60(b)(3) can entail: vacatur based on a contaminated process, not review of a motion's merits.[10] See Gonzalez, 545 U.S. at 532; Schultz, 24 F.3d at 631.

Our prior decision in In re Lowe, 102 F.3d at 735, is similarly inapposite. In Lowe, the district court remanded the case due to lack of complete diversity between the parties, and the defendants moved for "reconsideration"--not vacatur--of the remand order. Id. at 732-33. The district court granted the motion, and the plaintiff petitioned this Court for a writ of mandamus. Id. at 733. This Court framed the "principal issue" in the appeal as "whether the district court exceeded its jurisdiction when it reconsidered its remand order." Id. at

---

[10] Although a handful of other appellate decisions have found that motions filed under different subsections of Rule 60(b) ask for impermissible review, those decisions are irrelevant here because their pertinent subsections do not focus on the means by which a remand order is obtained. See Bender v. Mazda Motor Corp., 657 F.3d 1200, 1202, 1204 (11th Cir. 2011) (affirming the lower court's denial of a Rule 60(b)(6) motion; Hood v. Allstate Ins. Co., 67 F. App'x 248, at *1-3 (5th Cir. 2003) (per curiam) (dismissing an appeal of a denied motion to vacate under Rule 60(b)(4)); Lucisano v. Lucisano, 216 F.3d 1072, at *1 (2d Cir. 2000) (dismissing an appeal of an order denying relief under an unspecified subsection of Rule 60(b)); Polyak v. Hulen, 898 F.2d 154, at *1 (6th Cir. 1990) (finding that jurisdiction could not be "reinvest[ed]" in the district court under Rule 60(b)(2)).

22

733-34 (emphasis added). This Court then determined that, "[i]ndisputably, 'otherwise' in § 1447(d) includes reconsideration by the district court." Id. at 734 (emphasis added).

Lowe is consistent with several factually similar cases (that is, cases in which a party asked for reconsideration of a remand order), all of which were correctly decided in view of § 1447(d)'s bar on "review." See, e.g., Agostini v. Piper Aircraft Corp., 729 F.3d 350, 355 (3d Cir. 2013) ("[W]e hold that we do not have jurisdiction to review an order denying a motion to reconsider a remand order."); Harris v. Blue Cross/Blue Shield of Ala., Inc., 951 F.2d 325, 326, 330 (11th Cir. 1992) (addressing the issue of "whether the district court had jurisdiction to 'reconsider' its order remanding the case to state court" and concluding that it did not).

The actions before the Court today, however, are not controlled by Lowe. Unlike in Lowe, Colgate requests vacatur, not reconsideration. And unlike reconsideration, vacatur does not require reassessing the facts that were presented to the district court at the time the cases were removed. See Aquamar S.A., 179 F.3d at 1288; Tramonte, 136 F.3d at 1028. Again, Colgate only argues that Plaintiffs' counsel misrepresented the actual facts of the case. Colgate therefore attacks the manner

23

by which Plaintiffs secured the remand orders, not the merits or correctness of the orders themselves.

In sum, nothing in the plain language of § 1447(d) or courts' interpretation thereof bars vacatur of the district court's remand orders if the court determines that such relief is warranted. Although reconsideration is a subspecies of review, see In re Lowe, 102 F.3d at 733-34, vacatur, without revisiting a prior order's merits, is no such cousin or relative.

## IV.

Because the district court had jurisdiction to consider Colgate's motions, it should have resolved the motions on their merits. A cursory reading of the court's orders, perhaps, suggests that it did just that.

In "den[ying]" Colgate's motions,[11] the district court apparently determined--in a hypothetical context in which jurisdiction was assumed--that "it would decline [to vacate the remand orders and] to impose [other possible sanctions]." (J.A. 1106-09.) This purported determination was based on the court's recognition that the statements at issue "are attributable to

---

[11] The court "denied" all of Colgate's motions, including the Rule 60(b)(3) motions that it technically should have "dismissed" based on the court's determination that it lacked jurisdiction. (J.A. 1107, 1109.)

24

different attorneys in markedly different litigation contexts."
(Id. at 1106, 1108.)  Thus, the court was "not convinced that
counsel's conduct is sanctionable."  (Id.)  Given the district
court's misconception that it lacked jurisdiction to give full
consideration to the merits of the Rule 60(b)(3) motions (and
possibly the Rule 11 motions, supra Part III.B), we give no
weight to the court's supposed determination.  Indeed, pursuant
to our discussion supra Part III.B, it was mere dicta.

On remand, the district court is directed to make specific
findings--supported by cogent reasoning--on whether Plaintiffs
engaged in misconduct while in federal court and whether Rule 11
relief is warranted.  Given the district court's familiarity
with the issues and litigants, it is better situated than us "to
marshal the pertinent facts and apply the fact-dependent legal
standard mandated by Rule 11."  Cooter & Gell, 496 U.S. at 402.
In making these determinations, the district court should
provide more analysis than that included in the orders' dicta,
which would be too perfunctory to merit meaningful review.  Cf.
United States v. Engle, 592 F.3d 495, 503-04 (4th Cir. 2010)
(remanding a case for new sentencing because the district court
failed to give an adequate explanation for its determination).

As with the Rule 11 motions, Colgate's Rule 60(b)(3)
motions require a showing of misconduct by the other party,

25

among other things.[12]  See Square Constr. Co. v. Wash. Metro. Area Transit Auth., 657 F.2d 68, 71 (4th Cir. 1981).  For the same reasons stated supra, the lower court, familiar with the facts and parties, is better suited to make this determination.

---

[12] One additional requirement is a showing that the movant had a "meritorious claim or defense."  Square Constr. Co. v. Wash. Metro. Area Transit Auth., 657 F.2d 68, 71 (4th Cir. 1981).  We acknowledge that courts most often use Rule 60(b)(3) to relieve a party of a determination on a case's substantive grounds.  Indeed, other circuits' standards for relief under Rule 60(b)(3) reflect such a focus by entailing an inquiry into the probable effect of misconduct on presenting one's "case" or proceeding at trial.  See, e.g., State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176 (2d Cir. 2004) ("To prevail on a Rule 60(b)(3) motion, a movant 'must show that the conduct complained of prevented the moving party from fully and fairly presenting his case.'" (citation omitted)); Venson v. Altamirano, 749 F.3d 641, 651 (7th Cir. 2014) ("The party seeking relief pursuant to Rule 60(b)(3) must show that he had a meritorious claim that he could not fully and fairly present at trial due to his opponent's fraud, misrepresentation, or misconduct."); Zurich N. Am. v. Matrix Serv., Inc., 426 F.3d 1281, 1290 (10th Cir. 2005) ("[T]he challenged behavior must substantially have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." (citation omitted)); Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F.3d 1303, 1314 (11th Cir. 2007) ("[T]he moving party must show that the conduct prevented the losing party from fully and fairly presenting his case or defense." (brackets and citation omitted)); In re Hope 7 Monroe St. Ltd. P'ship, 743 F.3d 867, 875 (D.C. Cir. 2014) ("[T]he movant must show the misconduct was prejudicial, foreclosing the 'full and fair preparation or presentation of its case.'" (citation omitted)).  Nowhere, however, do the Federal Rules of Civil Procedure or our precedent limit Rule 60(b)(3)'s applicability to judgments on a case's merits.  Although we decline to explore the full breadth of Rule 60(b)(3), we simply note that it applies to the present situation, in which a party alleges that misconduct prevented it from fully and fairly presenting its "claim" of entitlement to a federal forum.  Cf. Black's Law Dictionary 301 (10th ed. 2014) (defining a "claim" as "[t]he assertion of an existing right").

26

Therefore, we remand the cases to the district court to decide Colgate's Rule 60(b)(3) motions and whether vacatur of the remand orders is warranted.

## V.

The district court's orders are reversed. The cases are remanded for the district court to rule on Colgate's Rule 11 and Rule 60(b)(3) motions on their merits.

<u>REVERSED AND REMANDED</u>

27

WYNN, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority opinion that courts retain the power to sanction attorneys after a remand to state court. But in my view, so did the district court.

The district court rightfully understood that it generally could sanction the parties here—that is why it denied, instead of dismissing for lack of jurisdiction, the sanctions motions. It is clear that the district court determined that the complained-of conduct did not warrant sanctions. Its determination is, however, so sparse that we cannot properly review it. I therefore agree that the matter should be remanded to the district court, solely for further explanation of the decision to deny sanctions.

I.

Although my fine colleagues in the majority opinion frame the first issue before us as "whether a district court retains jurisdiction to impose sanctions after remanding an action to state court," ante at 15, I do not believe that this is an issue we must address—because the district court understood perfectly well that it did.

Indeed, nothing in the district court's order on appeal suggests that the court believed that it generally lacked jurisdiction to impose sanctions for attorney misconduct after

28

remand to state court. Instead, the district court generally noted that while it found counsel's conduct "troubling," the court was "not convinced that counsel's conduct is sanctionable." J.A. 1106. That is why the district court simply denied the motions rather than dismissing them for lack of jurisdiction.[1]

Additionally, the district court recognized that Defendant sought only one sanction—"for the Court to strike the orders of remand[,]" J.A. 1106, and apparently believed that such relief would effectively constitute reconsideration, which 28 U.S.C. § 1447(d) prohibits. Nevertheless, the district court deemed the challenged conduct unworthy of sanctions. Therefore, so long as that determination stands, any error in the district court's Section 1447(d) analysis was harmless.

That being said, I agree with the majority opinion that this matter should be remanded to the district court. At bottom, the parties dispute whether Plaintiffs, through counsel, misrepresented to the federal district court that there existed the "slight[est] possibility of a right to relief" or a "glimmer of hope" on their claims against Maryland state defendants such

---

[1] My fine colleagues in the majority opinion frame the second issue before us as "whether an appeals court can review a district court's determination regarding the imposition of sanctions in such a circumstance." Ante at 15. But, frankly, I fail to see why that needs to be addressed here, particularly given that we are remanding.

29

that remand to state court was appropriate. J.A. 368. After remand to state court, Plaintiffs, through counsel, represented their matters as one-defendant cases. I find the district court's abbreviated analysis—that the statements were made by different lawyers in different contexts, with no elaboration or explanation—insufficient to allow for appellate review. I therefore agree that we should remand to the district court for further explanation of its decision. See, e.g., Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990) (remanding for reconsideration a denial of sanctions "where the circumstances and the record do not clearly reflect the reasons for the district court's disposition"), overruled in part on other grounds, Farmer v. Brennan, 511 U.S. 825 (1994).

II.

In sum, the majority opinion makes an issue where none exists. I cannot agree with that undertaking—but do agree with the majority that the district court's sanctions determination is too minimalist to review. Therefore, I would remand solely for further explanation of that determination.[2]

---

[2] An unaddressed question in this appeal is how, procedurally, these cases would make their way from state court back to federal court and whether their doing so would offend either the Anti-injunction Act, 28 U.S.C. § 2283, or the notions of comity underpinning it.

30

Finally, we all should bear in mind that federal courts have no monopoly on the ability to sanction attorney misconduct. If counsel engages in misconduct after a matter has been remanded to state court, we should "have every confidence that the [state court] has the authority and judicial resourcefulness to deal with such a problem." Three J Farms, Inc. v. Alton Box Bd. Co., 609 F.2d 112, 116 n.3 (4th Cir. 1979).[3]

---

[3] The entirety of Three J Farms footnote three is worth noting:

> In his order . . ., the district judge referred to certain conduct of counsel for the plaintiffs which had occurred subsequent to his [prior remand] order . . . and indicated that the attorneys were using the state litigation to "harass the defendants." Having divested itself of jurisdiction by the original remand order, the district court had no continuing supervisory authority over the conduct of counsel, nor was any such conduct an appropriate basis for vacation of the remand. We might add that if, in fact, the plaintiffs were using the state litigation in an improper manner, we have every confidence that the South Carolina Court has the authority and judicial resourcefulness to deal with such a problem.

Id.

DAVIS, Senior Circuit Judge, dissenting:

Every now and again, a case comes along that leaves the careful reader scratching her head in puzzlement. This is one of those cases. It could not be more clear that the author of the panel dissent, who now authors the majority for the en banc court, disagrees, and vigorously so, with the district court's decision to remand this case to state court. That is not surprising; judges disagree all the time, and a good thing that. What is surprising here is that the disagreement has led to this bizarre rehearing in which a subset of the judges in regular active service on this court feel constrained to order the district judge, in effect, to redo his "mid-term exam" on removal jurisprudence and sanctions law. District judges (including me, when I was a member of that hardworking guild) have long accepted the fact that appellate judges "'grade [their] papers' on appeal." See Robert Bruce King, Robert C. Byrd and the Fourth Circuit Court of Appeals, 108 W. Va. L. Rev. 607, 609 (2006) (quoting the Honorable Joseph Robert Goodwin, United States District Judge for the Southern District of West Virginia). But the instant grading of papers takes that aphorism to new heights (or, if you will, a new low).

In the recurring, decades-old, hand-to-hand combat which characterizes removal/remand litigation in federal district courts, this case does not stand out. Defendants (virtually)

32

always want to be in federal court whenever they can because: (1) discovery practice is more orderly, predictable, and, generally, more expensive for plaintiffs; (2) summary judgment practice is more defendant-friendly;[1] and (3) juror selections from the available jury pools, generally drawn from the wider expanse of a federal district than the insular state judicial region from which they are drawn in state court, are more attractive to defendants. On the other hand, most plaintiffs in cases removed on the basis of diversity of citizenship (and, more importantly, plaintiffs' counsel) prefer state court over federal court for the very obverse of the above-listed factors. (I am not revealing palace secrets here.)

Thus, it was strange to hear, at oral argument before the panel in this case, Colgate's attorney repeatedly insist that Appellees' counsel had engaged in "jurisdictional manipulation" (as if that were some kind of cardinal sin) in their efforts to persuade the district judge to remand the case through invocation of our longstanding "glimmer of hope" test. See Mayes v. Rapoport, 198 F.3d 457, 466 (4th Cir. 1999). Colgate calls

---

[1] Compare Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) ("Recent cases of the Supreme Court have made increasingly clear, however, the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial."), with Montgomery Cnty. Bd. of Educ. v. Horace Mann Ins. Co., 860 A.2d 909, 915 (Md. 2004) ("[I]n Maryland, a trial court has some discretion to deny summary judgment even when it could grant that relief . . . .").

this customary aspect of removal/remand litigation "misconduct" within the meaning of Fed. R. Civ. P. 60(b)(3) because plaintiffs' legal tactics took a different turn upon remand of the case to state court, where the "glimmer of hope" test could be ethically discarded given the changed legal landscape and in light of a client's best interest. Nothing new here.

Back in federal court, Colgate filed a belated motion under Rule 60(b)(3) seeking to "vacate" (but, according to the majority, through a feat of linguistic jiu-jitsu, not "review") the order of remand. The distinguished district judge, who will shortly mark his twenty-fifth anniversary on the federal trial bench (commenced after five years on the Maryland state trial bench), rejected Colgate's attempts to slime the plaintiffs' lawyers in these cases. He found there was no "misconduct" (to say nothing of "misrepresentation"), and he further found that, in any event, the sole relief sought by Colgate for counsel's "misconduct," restoration of federal jurisdiction, was beyond the court's power to grant, citing, correctly in my view, 28 U.S.C. § 1447(d). See Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008) ("The important policy carried in [§ 1447(d)] disfavors prolonged interruptions to litigation created by litigating which of two otherwise legitimate courts should resolve the disputes between the parties.").

All agree that Rule 11 is the reddest of red herrings in this case. Ante at 17, 18 n.8 ("As these cases demonstrate--and as we reiterate here--district courts have jurisdiction to decide Rule 11 sanctions motions on the merits, even when they are filed after the underlying action is remanded to state court"; "there is no basis in using Rule 11 as a means to vacate a remand order and to return a case to federal court."). Unlike the majority, I have no doubt that the district court knew full well, after more than twenty years of service as a federal trial judge, it had post-remand authority to impose sanctions on ethically challenged attorneys under Rule 11. The contrary insinuation is flatly insulting to the district court.

Alas, although the panel dissent would have found as a matter of law that there was misconduct by Appellees' counsel and that federal jurisdiction must be restored as a remedy for that misconduct,[2] the en banc court prudently and correctly

---

[2] See Barlow v. Colgate Palmolive Co., 750 F.3d 437, 462 (4th Cir. 2014) (Floyd, J., dissenting), reh'g en banc granted:

> Because the law is clear that remand does not deprive a court of jurisdiction to sanction a party pursuant to Rule 11, I would reverse the district court's denial of Colgate's Rule 11 motion. And because it would have been an abuse of discretion to not sanction plaintiffs and their counsel, I would sanction plaintiffs and their counsel as set forth above in Part III.A. Furthermore, because vacatur of the remand orders does not require "review" of the merits of those orders, I would reverse the district court's denial of Colgate's Rule 60(b)(3) motion for

(Continued)

35

refuses to go that far and instead, simply directs the district court to write a longer opinion. Ante at 25–27.

To be sure, however, this is not all that the majority achieves. It is now the law of the Fourth Circuit that a Rule 60(b)(3) motion must be entertained by every district judge in the circuit in any remanded case, and the district judge is required to write a convincing opinion showing why "vacatur" of the remand order is inappropriate. The majority rejects out-of-hand, as lacking thoughtfulness and serious attention by the rendering courts, the unpublished opinions of three of our sister circuits that have explicitly refused to carve out Rule 60(b) exceptions to the clear mandate of 28 U.S.C. § 1447(d). Ante at 21–22 (dismissing from consideration Wachovia Mortg. FSB v. Marquez, 520 F. App'x 783, 785 (11th Cir. 2013) (per curiam); Ysais v. Ysais, 372 F. App'x 843, 844 (10th Cir. 2010); Lindo v. Westlake Dev. Co., 100 F.3d 963, at *1 (9th Cir. 1996) (table)). This is a curious en banc critique, to say the least, for a circuit that has permitted two of its judges to vacate a twenty-four month sentence imposed by another distinguished district

---

lack of jurisdiction. And because I think that Colgate has met the criteria to obtain relief under Rule 60(b)(3) and that it would have been an abuse of discretion to not grant relief to Colgate, I would vacate the remand orders and remand the cases with instructions as set forth above in Part III.B.

36

judge in ordering, instead, the imposition of a fifteen year sentence, <u>on the basis of a non-argued, non-precedential, unpublished opinion of its own</u>. See <u>United States v. Foster</u>, 674 F.3d 391, 402–03 (4th Cir. 2012) (Davis, J., dissenting from the denial of rehearing en banc) (criticizing panel majority's reliance on <u>United States v. Shelton</u>, 196 F. App'x 220 (4th Cir. 2006), in reversing factual finding of the district court).

Of more salience, none of the principal pillars of the majority's handiwork in eviscerating § 1447(d) will bear the weight assigned to them. <u>Gonzalez v. Crosby</u>, 545 U.S. 524 (2005), was a federal habeas case in which Justice Scalia cited <u>dicta</u> from a Second Circuit opinion to make the point that some Rule 60(b)(3) motions would not be considered <u>successive petitions</u> under 28 U.S.C. § 2254. <u>See</u> <u>id.</u> at 532 n.5 (citing <u>Rodriguez v. Mitchell</u>, 252 F.3d 191, 199 (2d Cir. 2001)). This is a thin reed on which to countermand an unambiguous federal jurisdictional statute such as 28 U.S.C. § 1447(d).

Nor is <u>Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.</u>, 179 F.3d 1279 (11th Cir. 1999), of any genuine assistance to the majority. In that case, relying on <u>City of Waco v. United States Fid. & Guar. Co.</u>, 293 U.S. 140 (1934), the court applied the well-recognized but limited exception to non-reviewability of remand orders called the "<u>Waco</u> doctrine":

> The Waco doctrine allows us to review district court orders that lead to, but are separate from, orders of remand and have a conclusive effect upon the ensuing state court action. See, e.g., Beauclerc Lakes Condominium Ass'n v. City of Jacksonville, 115 F.3d 934, 935 (11th Cir. 1997) (reviewing dismissal of federal claim that led to remand); Armstrong v. Alabama Power Co., 667 F.2d 1385, 1387 (11th Cir. 1982) (relying on Waco to review district court's dismissal of United States as party prior to remand) . . . . Similarly, vacating a remand to give effect to a judgment on another matter is an "essentially ministerial task," rather than a review. This circuit has held that a court of appeals may vacate an order of remand when necessary to give effect to its judgments. In Flohr v. Mackovjak, 84 F.3d 386, 392 (11th Cir. 1996), this court reversed the district court's denial of the defendant's motion to substitute the United States as the party defendant in a negligence action, a denial that led to remand to state court.

Aquamar S.A., 179 F.3d at 1286, 1289. Thus, Aquamar S.A. presented the extraordinary situation in which vacatur of the remand order was the sine qua non to the effectiveness of the Eleventh Circuit's mandate.[3]

Here, in contrast, the majority's elevation of Rule 60(b)(3), so that it trumps the statutory prohibition on review of remand orders, serves no other purpose than a needless decisional do-over by the district court. Simply put, vacatur contravenes the mandate of § 1447(d). I have little doubt that when it gets around to it (should any sister circuit blindly

---

[3] Tramonte v. Chrysler Corp., 136 F.3d 1025 (5th Cir. 1998), in which the appellate court reviewed a district judge's pre-remand denial of a motion for recusal, fits the same description.

follow ours, an unlikely eventuality), the Supreme Court will reject such a blatant evasion of 28 U.S.C. § 1447(d).

Indeed, this case is a first-round draft choice for summary reversal should plaintiffs choose not to go back to the district court to achieve the preordained results of the do-over unwisely ordered by the majority and instead file a petition for certiorari.

Despite the district court's abbreviated discourse on a matter that most federal judges would regard as obvious, I do not believe there is any reason to think the district court did not fully comprehend and appreciate sanctions jurisprudence; Judge Nickerson has encountered it many times. See, e.g., Watkins v. Trans Union LLC, No. WMN-10-838, 2010 WL 4919311 (D. Md. Nov. 29, 2010) (dismissing case as a sanction); Awah v. Board of Educ. of Baltimore Cnty., No. WMN-09-CV-1044, 2010 WL 9086039 (D. Md. June 10, 2010) (imposing monetary sanctions for discovery violations), aff'd, 408 F. App'x 687 (4th Cir. 2011); Greer v. Crown Title Corp., 216 F. Supp. 2d 519 (D. Md. 2002) (in removed case, denying plaintiff's motion for sanctions while granting motion for remand to state court).

Nor is there any reason to think that Judge Nickerson is unfamiliar with this Circuit's abundant removal jurisprudence; to the contrary, he has lots of experience with it. See, e.g., Hammonds v. Baltimore Cnty. Bd. of Educ., No. WMN-11-3348, 2012

39

WL 787478 (D. Md. Mar. 8, 2012) (granting motion for remand); Schaftel v. Highpointe Bus. Trust, No. WMN-11-2879, 2012 WL 219511 (D. Md. Jan. 24, 2012) (denying motion to remand and allowing removing defendant to amend the Notice of Removal to correct deficient allegations therein); Henderson v. Jinny-Poot Props., Inc., No. WMN-11-2482, 2011 WL 6000554 (D. Md. Nov. 28, 2011) (granting motion to remand); Beltway Capital, LLC v. Mortg. Guar. Ins. Corp., No. WMN-11-376, 2011 WL 2066603 (D. Md. May 25, 2011) (denying motion for remand); Streeter v. SSOE Sys., No. WMN-09-CV-01022, 2009 WL 3211019 (D. Md. Sept. 29, 2009) (denying motion for remand); Hewett v. Tri-State Radiology, P.C., No. WMN-09-2017, 2009 WL 3048675 (D. Md. Sept. 17, 2009) (granting motion for remand).

The remand here is unwarranted on many levels, and represents an "inefficient use of scarce judicial resources," indeed. Ellenburg v. Tom Johnson Camping Ctr., Inc., No. 8:06-cv-1606, 2006 WL 1576701, at *2 (D.S.C. May 31, 2006) (Floyd, J.), rev'd sub nom. Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192 (4th Cir. 2008).

Accordingly, I respectfully dissent.